(Decided July 12th, 1860.)

---

## SUSAN E. HOWELL and OTHO H. WILLIAMS, exc'rs of JOHN B. HOWELL, *vs.* BALTIMORE EQUITABLE SOCIETY, for insuring houses from losses by Fire.

It may be true, as a general rule, that when a loss has happened from the perils covered by a fire policy, and the insurer claims exemption under the clause of the policy against unauthorized alterations, increasing the risk, and providing that any loss, *happening by reason of such alterations,* shall not be paid, the *onus* is on him to prove the facts which entitle him to the exemption.

But where there is a total destruction of the building by fire, and the claim is for the whole loss, and it is shown to have resulted either altogether, or to an unknown extent, from an unauthorized alteration which increased the risk, the loss must fall on the *assured,* unless *he* furnishes proof of some loss occasioned by other causes than such alteration.

Under the clause of a fire policy making it *void* if any unauthorized hazardous trade, increasing the risk, is carried on in the building, the fact that such trade was carried on avoids the policy, no matter what was the cause or origin of the fire, or that such trade was carried on by the tenant of the assured without his knowledge or consent.

APPEAL from the Superior Court for Baltimore City.

*Covenant,* brought on the 30th of November 1854, by the appellants' testator against the appellee, upon an insurance policy. The pleadings and facts of the case are fully stated in the opinion of this court. A single exception was taken by the plaintiffs to the ruling of the court below, (LEE, J.,) which is also fully stated in the opinion of this court. The

48      v.16

verdict and judgment were in favor of the defendant and the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. Schley,* for the appellants:

1st. A loss by fire, occasioned by the act of an incendiary, is within the risk assumed by the policy in this case; and there was evidence in the cause, from which the jury might rationally have found, that the fire thus originated. 1 *Sumner,* 444, *Catlin vs. Springfield Fire Ins. Co. Angell on Fire & Life Ins. Co., sec.* 126.

2nd. A loss by fire, occasioned by the negligence or misconduct of tenants or other persons, in the absence of any connivance, co-operation, consent or knowledge on the part of the assured, is a risk within the policy. The assured does not warrant that his tenant will do no wrong; and even if the assured should not be vigilant in looking after his property during the term of the tenancy, and should even be considered as negligent in fact, yet he is under no *legal* obligation of duty to keep watch over his tenants. If he has an insurable interest in the property, acts throughout in good faith, and does not directly or indirectly, wilfully or knowingly, do any thing to vary or increase the risk, or knowingly permit any thing to be done, to vary or increase the risk, he does not lose the benefit of the insurance. If the law were otherwise, owners of reversionary interests in houses would have a very precarious security in a policy of insurance in the ordinary form of such instruments. 11 *Pet.,* 220, *Waters vs. Merchants Louisville Ins. Co.* 1 *Selden,* 479, *Gates vs. Madison Co. Mutual Ins. Co.*

3rd. The true construction of the clause as to material alteration is this: good faith, the *utmost* good faith, is required on the part of the assured; and hence *information* is to be given, in writing, of *intended* alterations, that is, of alterations *about* to be made. But if the *assured* does not con-

template alterations—if he does not know that *his tenant* intends to make any—if the tenant commits *waste* in making alterations without the knowledge of the assured—what want of *good faith* is there on the part of the assured? What default in failing to give *information* in the absence of *knowledge* on his part of the unauthorized alteration? The true doctrine is this: if the assured incurs loss *by fire*, as the proximate cause of the loss, although the fire may have happened by reason of unauthorized alterations made by another, yet if there was no connection, direct or indirect, of the assured with the alterations, and no opportunity in fact to prevent them, he is entitled to indemnity. Demising to another a dwelling house is a lawful use of property, and does not make the lessee the property *agent* of the landlord; much less confer on him authority to commit *waste* by pulling down the tenement in whole or in part. And the representation, if true, at the time that the building was a dwelling house, is not *a warranty* that it shall not thereafter be used except as a dwelling house. 1 *Selden*, 479, *Gates vs. Mad. Co. Ins. Co.* 6 *Adol. & Ellis*, 75, *Shaw vs. Robberds*, in 33 *Eng. C. L. Rep.* 3 *Comstock*, 123, *O'Neill vs. The Buffalo Fire Ins. Co. Angell on Fire Ins.*, secs. 147, 155, 168. 6 *Man. & Gran.*, 1, *Pim vs. Reid*, in 46 *Eng. C. L. Rep.* 1 *H. & G.*, 295, *Jolly vs. Baltimore Eq. Soc.* 20 *Conn.*, 139, *Billings vs. Tolland Co. Mutual Ins. Co.* 2 *Md. Rep.*, 125, *Allen vs. Harford Co. Mutual Ins. Co.*

4th. The defendant's third prayer, as granted, excludes from the hypothesis all connection between the *happening* of the fire and the alleged alterations. The condition in the policy is— "in default thereof, any loss *happening* to the insured premises *by reason* of making said repairs or alterations, shall not be paid or demanded under the said policy." If the fire was occasioned by the torch of an incendiary, how can it be said that the fire happened *by reason* of making said repairs or alterations? The alterations proved was such as did not increase the liability to fire, but only tended to increase the extent of the conflagration, and to augment the amount of the loss, and although to the extent of such increase of the

loss the company may be exempt, yet the plaintiffs would have a right to recover for so much of the loss as did not result from the alterations, and the *onus* was upon the company claiming this exemption to show, to what extent the loss and damage were occasioned by the alterations made in the building. In this respect the prayer is unwarranted by the condition in the policy, and is a departure from the defence taken in pleading by the defendant. Conditions in discharge of the liability of the insurer are to be fairly construed, not rigidly. And where issue is joined upon a precise and definite plea, the substance of the plea is necessarily involved in the issue. 3 *Excheq.*, 543, *Barrett vs. Jermy.* 1 *Chitty's Pl.*, 653, 654.

*H. C. Dallam* and *Robt. J. Brent*, for the appellee:

1st. The only question for the jury was, whether by either of the modes referred to in the defendant's first and second prayers, a *material increase of risk* was occasioned to the property insured. The whole inquiry, as to whether or not the alterations, proved to have been made in the insured premises, or whether or not the using of the building, which had been insured as a dwelling house, for the purpose of manufacturing organs, or both, increased the risk, was left *for the jury*, and this is the rule of law laid down by the authorities. *Parsons Merc. Law*, 504, and cases cited in notes. 3 *Kent*, 374. 2 *Greenlf. on Ev.*, sec. 408. 2 *Md. Rep.*, 125, *Allen vs. Mutual Fire Ins. Co.* 4 *Mass.*, 330, *Stetson vs. Mass. Fire Ins. Co.* 1 *H. & G.*, 295, *Jolly vs. Balto. Equitable Society*, 10 *Pick.*, 535, *Curry vs. Commonwealth Ins. Co.* 21 *Pick.*, 162, *Merriam vs. Middlesex Ins. Co. Smith's Merc. Law*, 412, and *notes.* 5 *Hill*, 10, *Grant vs. Howard Ins. Co.* 7 *Wend.*, 72, *Jefferson Ins. Co. vs. Cotheal.* 1 *Strob.*, 281, *Boatwright vs. Etna Ins. Co.* 8 *Cush.*, 82, *Jones Manuf. Co. vs. Man. Ins. Co.* There was ample testimony before the jury, at the trial, that the risk had been materially increased, both by the alterations, and by the hazardous trade or business carried on in the building. It was insured as a dwelling house, and was then,

without the permission of the insurance company first had and obtained, as required by the policy, which was the contract between the parties, converted into an organ factory. The rule of law is clear, that if a building be described as of one class instead of another, when a larger premium would have been required for that other, the policy becomes completely *void*. *Smith's Merc. Law*, 410, and cases there cited.

2nd. If, therefore, from all the evidence, the jury found the facts as stated in the defendant's first and second prayers, which were conceded to be law by the plaintiffs' counsel, it is then submitted, that the particular manner in which the building was set on fire is immaterial, and cannot effect the defence set up in this case. If the conditions of the policy were violated, and if thereby, in the opinion of the jury, the risk to the insured premises was materially increased, and which risk the jury, by their verdict, adjudged was increased, then the plaintiffs' testator lost all right to recover under this policy. As to the rule of law in construing the conditions in policies, see 5 *Md. Rep.*, 165, *Associated Firemen's Ins. Co. vs. Assum;* 16 *Pet.*, 510, *Carpenter vs. Providence Washington Ins. Co.; Smith's Merc. Law*, 401. Conditions inserted in the policy, are parcel of the contract, and must be strictly and literally observed. *Smith's Merc. Law*, 415. 6 *Cowen*, 677, *Fowler vs. Etna Ins. Co.* 5 *Hill*, 10, *Grant vs. Howard Ins. Co.* 6 *Term Rep.*, 710, *Worsley vs. Wood.* 26 *Eng. Law & Eq. Rep.*, 238, *Sillem vs. Thornton*. And that the premises were destroyed by an incendiary would make no difference, as to the rights of the parties under the policy. If the alteration of the premises be of a permanent character, and cause a material increase of the risk, then it is a substantial breach of the contract, and the insurers are discharged; and they are discharged equally, whether the fire be caused by the alteration, or by some wholly independent matter. *Parsons Merc. Law*, 506. 2 *Greenlf. on Ev.*, sec. 408. 21 *Pick.*, 162. 20 *Eng. Law & Eq. Rep.*, 364, *Glen vs. Lewis*.

3rd. And lastly, as contemplated by the latter clause of the

382 MARYLAND REPORTS.

Howell's ex'ers *vs.* Balto. Equitable Society.

defendant's third prayer, if the jury found the facts set forth in the first and second prayers, it is quite immaterial in this case to the defence set up, whether the tenant, Pomplitz, made the alterations, or changed the use of the building from a dwelling to an organ factory, without the knowledge of the assured or not. 6 *Wend.*, 493, *Duncan vs. Sun Fire Ins. Co.* 2 *Md. Rep.*, 129, 131. It was the duty of Howell to see to it, that his contract with the insurance company, as contained in the policy, was observed. If he failed to do this, it was his own neglect and default, and for the consequences of his ignorance he must suffer. But, if it be conceded that the plaintiffs could recover for so much of the loss as was caused by the work of an incendiary, the *onus* was on them to show to what extent the loss was so caused, and was wholly independent of the alterations in the building, and, in the absence of such proof, they cannot recover. No such proof was offered, and indeed none could be offered, for the whole building was destroyed, and there was a total loss of the property insured.

BARTOL, J., delivered the opinion of this court:

This suit was instituted on a policy of insurance, issued by the appellee, to John B. Howell, (the appellants' testator,) on a *dwelling house*, situated on Albermarle street, in the city of Baltimore.

The premises insured were destroyed by fire in May 1854, and to recover the loss thereby incurred, this action was brought. The policy contains the following stipulations:

"When any material alteration or repairs are about to be made in the premises insured, or any part thereof, during the continuance of this policy, which increase or vary the risks hereby insured, information thereof shall be given in writing to the office, and permission be obtained from the directors of said society to make such alterations or repairs, and in default thereof, any loss happening to the said insured premises by reason of making said repairs or alterations shall not be paid, or demanded, under this policy."

Howell's ex'rs *vs.* Balto. Equitable Society.

"If any hazardous trade, business or occupation, shall be carried on upon the premises insured, after the issuing of this policy, which shall increase the risk hereby insured, information shall, in like manner, be given to the said society, and a permission be obtained to carry on the said business, trade or occupation, so increasing the risk as aforesaid, and in default thereof, this policy shall be void, and no loss or injury accruing thereafter to the premises insured, shall be payable or demanded in virtue thereof."

By agreement all errors of pleading were waived, and the defendant stated and relied on two grounds of defence:

"1st. That subsequently to the insurance, and during the continuance of the policy, material alterations in and about the premises insured were made, which increased and varied the risks thereby insured, in this, to wit, that the joists were cut out, and the ceiling or flooring between the first and second stories of the main building, were in part removed and taken out, without any information in writing being given to the defendant, and without any permission therefor having been obtained from the directors of said society, and that the loss which happened to said premises, and which is now sued for, did happen to the same by reason of making said alterations."

"2nd. That a hazardous trade, business or occupation was carried on upon the premises insured, after the issuing of said policy, in this, viz., that the same were used as an organ factory, and with that view, divers large quantities of dry wood and combustible materials were used and left in and about said building, which did increase the risk thereby insured, without any information thereof being given to the defendant, and without any permission being obtained to carry on the trade, business or occupation, so increasing the risk as aforesaid, and that the loss now sued for did thereafter happen to said premises, and so the said defendant is not liable."

In the course of the trial below, evidence was given of the facts set out in the grounds of defence, and that the change in the interior construction of the building materially increased the risk; and also that organ building is a "hazard-

ous trade, business and occupation," requiring the use of materials of a highly combustible character, which materially increased the risk to the premises insured. The defendant then asked two instructions to the jury, both of which were granted by the consent and acquiescence of the plaintiffs, and the plaintiffs on their part offered eight prayers, all of which were likewise granted by consent. The defendant then offered a third prayer, which was granted by the court, and to the granting thereof the plaintiffs excepted. That is the only exception brought before us on this appeal, which presents the single question of the propriety of the ruling by the Superior court upon the defendant's third prayer.

The first and second prayers of the defendant, which are referred to and incorporated in the third prayer, are as follows:

"1. If the jury shall find, from the evidence, that after the execution of the policy in evidence, and before the fire, as stated in the evidence, the plaintiff, or his tenant, caused certain material alterations to be made on the property insured; and shall further find, that 'by reason of making said alterations,' a material increase of risk was occasioned to the property insured, and that the said loss by fire was occasioned by reason of said alterations, then the plaintiff is not entitled to recover in this action, because he has failed to show, in evidence, the notice and permission required by the terms of the condition of the policy."

"2. If the jury shall find, from the evidence, that after the execution of the policy, in evidence, and before the fire, the plaintiff, or his tenant, carried on in said premises 'any hazardous trade, business or occupation;' and shall further find that the risk insured by said policy was thereby materially increased, then the plaintiff is not entitled to recover in this action, he not having shown that the notice required by the terms of said policy was given to the defendant, nor the permission, provided for by the terms of the policy, had been first obtained from the company."

The third prayer was as follows:

"If the jury shall find, from the evidence, the facts in

either of the defendant's 1st or 2nd prayers, then the jury must find a verdict for the defendant, even although they shall believe, from the evidence in the cause, that the fire which destroyed said premises, mentioned in said policy of insurance, on the night of the 27th of May 1854, was the work of an incendiary, and even although they shall further believe, from the evidence in the cause, that said alterations were made, or that said hazardous trade was carried on in said premises by the plaintiffs' tenant, Pomplitz, without the knowledge or consent of the plaintiffs' testator, that said insured building should be so used."

The first and second prayers presented two distinct grounds of defence, which, in examining the third prayer, where they are blended together, it is necessary to consider separately.

Under the first prayer, in order to exempt the company from liability, it was necessary for the jury to find, "that the loss was occasioned by reason of the alteration in the building;" and by the third prayer the jury was instructed, that if they so found, the defendant was entitled to a verdict, although they should "believe, from the evidence, that the fire which destroyed the premises was the work of an incendiary." This instruction, it has been contended, was erroneous, because, it is said, if the fire was caused by an incendiary, it is impossible the loss which resulted could have been occasioned by the alteration in the building; that the alteration proved was such as did not increase the liability to fire, but only tended to increase the extent of the conflagration, and to augment the amount of the loss; and although to the extent of such increase of the loss, the defendant would be exempt, yet the plaintiffs would have a right to recover for so much of the loss as did not result from the alterations. And it was further contended, by the appellants, that the *onus* was upon the defendant, claiming the exemption, to show to what extent the loss and damage were occasioned by the alteration made in the building.

On the other hand, the appellees have contended that the *onus* was upon the plaintiffs to show to what extent the loss was caused by the work of an incendiary, and was wholly

independent of the alterations in the building, and that in the absence of any such proof they are not entitled to recover. This is a very nice and ingenious point, the decision of which is not altogether free from difficulty. But, in the opinion of a majority of this court, the appellants' view ought not to be sustained. It may be true, as a general rule, that where a loss has happened from the perils covered by a fire policy, and the insurer claims exemption, under such a clause as that which in this case constitutes the first ground of defence, the obligation rests upon the insurer, to prove the facts which entitle him to the exemption. But the question now presented, by the argument, is one of partition or division of the loss. While the case presented by the record is one of a total or entire destruction of the building by fire, and a claim for the whole loss, for a portion of which it is conceded, in the argument on this point, the defendant is not liable, and without any proof, or any possibility of proof, to show to what extent it resulted from causes covered by the policy, or to what extent it was occasioned by the acts of the plaintiffs' tenant, in violation of the contract.

Under such a state of facts, it would be unjust and contrary to the spirit and intention of the contract, to impose upon the insurance company the burden of proving the extent of its exemption, which has been rendered impossible by the wrongful act of the other party, or what is the same thing, of his tenant in possession of the property.

The loss being entire and indivisible, and it being shown to have resulted, either altogether or to an unknown extent, from an unauthorized alteration in the building, which increased the risk, the loss must fall on the insured, unless he furnishes proof of some loss which was occasioned by other causes than the alteration in the building.

The facts stated in the defendant's second prayer, if found by the jury, exempted the company from all liability upon the policy; because, by the terms of the contract, such facts rendered the policy void; and this result would not depend, in any manner, upon the cause or origin of the fire; nor would it be varied, by reason of the hazard-

ous trade being carried on by the plaintiffs' tenant, without his knowledge or consent. *Parsons Merc. Law,* 505. *Duncan vs. Sun Ins. Co.,* 6 *Wend.,* 493, 494.

We find no error in the granting of the defendant's third prayer; no objection is made to it on account of its form, and the principle it asserts would seem to follow, as an inevitable consequence, from the first and second prayers, which were conceded by the plaintiffs. In the opinion of a majority of this court, the ruling below, upon the defendant's third prayer, shall be affirmed.

*Judgment affirmed.*

(Decided July 13th, 1860.)