# LIVERPOOL & LONDON INSURANCE COMPANY *v.* GUNTHER.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

Argued November 12, 1885.—Decided December 21, 1885.

A violation of any of the prohibitions in a policy of insurance against fire by a tenant, who occupies the insured premises with the permission of the assured, is a violation by the assured himself.

If a policy of insurance forbids the keeping of gasoline or benzine on the insured premises, but authorizes the use of gasoline gas there, the latter authority gives no warrant for keeping gasoline or benzine there for any purpose other than the manufacture of gas.

As the practice in New York allows a variance between proof and pleadings to be cured by amending the latter when the opposite party is not misled, if, in the trial of an action in that State on a policy of insurance, evidence is offered without objection, establishing or tending to establish a defence under the policy which has not been properly pleaded, and, on defendant's request for instructions, founded on that evidence, no objection is made that the defence was not within the issues, it is competent for the defendant to rely upon the defence after the opportunity for amending the pleadings has passed.

This was an action at law brought by Charles Godfrey Gunther, a citizen of New York, in the Supreme Court of that State, against the plaintiff in error, a corporation created by the laws of Great Britain, and consequently an alien, and by the latter removed into he Circuit Court of the United States

for the Southern District of New York. There was a verdict and judgment for the plaintiff below; brought here for review by this writ of error.

The object of the action was to recover the amount claimed to be due on two policies of fire insurance, issued by the defendant below, in favor of the plaintiff, one for $20,000 on the two-story hotel frame building, with one-story frame kitchen and two-story frame pavilion building adjoining and communicating, situate in Gravesend Bay, of Bath, Kings County, Long Island, $1000 on the two-story frame stable occupied in part as a dwelling, and $200 on frame bathing-houses; and the other for $8500 on the contents of the buildings insured. The loss by fire was alleged to have occurred on August 15, 1879, while both policies were in force.

The execution of the policies and the fact of the destruction by fire of the insured premises were admitted by the answer, which, however, denied generally all the allegations of the complaint, not expressly admitted, or otherwise controverted in the answer, and, in addition, set out the following special defence:

"Tenth. For a separate and distinct defence to the causes of action alleged in the complaint, in addition to the matters and things hereinbefore set forth, the defendant avers that it was provided in and by the terms and conditions of said policies of insurance, among other things, as follows: 'If the assured shall keep gunpowder, fireworks, nitro-glycerine, phosphorus, saltpetre, nitrate of soda, petroleum, naphtha, gasoline, benzine, benzole, or benzine varnish, or keep or use camphene, spirit gas, or any burning fluid, or chemical oils, without written permission in this policy, then and in every such case this policy shall be void;' and further, 'That petroleum, rock-earth, coal, kerosene, or carbon oils of any description whether crude or refined; benzine, benzole, naphtha, camphene, spirit gas, burning fluid, turpentine, gasoline, phosgene, or any other inflammable liquid, are not to be stored, used, kept, or allowed on the above premises, temporarily or permanently, for sale or otherwise, unless with written permission indorsed on this policy, excepting the use of refined coal, kerosene, or other

carbon oil for lights, if the same is drawn and the lamps filled by daylight; otherwise this policy shall be null and void.'

".And the defendant avers that the said conditions of insurance were broken and violated on the part of the plaintiff, among other things, in that without written ·permission of the defendants, indorsed on said policies or otherwise, there were stored, used, kept, and allowed on the insured premises mentioned and described in said policies, benzine or benzole, or other inflammable burning fluids or liquids, prohibited by said policies, and defendant avers that the fire mentioned and referred to in the complaint originated and was caused by such storing, using, keeping, and allowance of such prohibited articles on said insured premises, and defendant avers that it is advised and believes that, by reason of the premises, the said policies became and were null and void."

Each of the two policies, after the description of the premises insured, contained the following clause: "Privilege to use gasoline gas, gasometer, blower and generator being underground about 60 feet from main building, in vault; no heat employed in process."

Among the conditions in the body of the policies was also the following:

"Petroleum, rock-earth, coal, kerosene, or carbon oils'of any description, whether crude or refined; benzine, benzole, naphtha, camphene, spirit gas, burning fluid, turpentine, gasoline, phosgene, or any other inflammable liquid, are not to be stored, used, kept, or allowed on the above premises, temporarily or permanently, for sale or otherwise, unless with written permission indorsed on this policy, excepting the use of refined coal, kerosene, or other carbon oil for lights, if the same is drawn and the lamps filled by daylight. Otherwise this policy shall be null and void."

To the first policy there was attached the following: "Privileged to use kerosene oil for lights, lamps to be filled and trimmed by daylight only." And, also, the following: "Privileged to keep not exceeding five barrels of kerosene oil on said premises."

To the second policy the first only of the foregoing privileges was attached.

On the trial, the plaintiff, having produced the policies sued on, with the renewal receipts, showing that they were in force at the time of the loss, was called as a witness, and testified, among other things, as follows:

"I was the owner of the insured property at the time of the insurance, and have continued such until the present time. A fire occurred on the 15th of August, 1879, about dusk, by which the building and its contents were totally destroyed. I was seated on the piazza of the building proper in sight of the pavilion. I saw some parties with pails and a light. There were some children playing. Mr. Lanier Walker was playing with some boys around some small trees that I had planted in the lot, and my attention was attracted by hallooing, and I saw the men come out as though they were on fire. It did not occur to me then that there was any fire in the oil-room, although I saw it. I saw these men, and ran out and said, 'Roll in the grass.' One man struck for the water and the other one had the fire thrashed out by the crowd. In another instant I saw the oil-room burning. The wind was from the southwest, blowing very hard right over the kitchen. The pavilion immediately caught, and in one hour's time or less the building was level with the ground."

The proofs of loss were read in evidence and the amount of the loss proven. The plaintiff also testified that during the summer of 1879 he had a room at the hotel, where he staid on an average of four nights out of the week. The rest of the time he was in New York. Mrs. Fanny Walker kept the hotel as tenant, her husband, Mr. John Walker, being manager for her.

The plaintiff having rested his case, the defendant introduced evidence, not objected to, tending to prove the following facts:

A gas-making apparatus for the use of gasoline, including a gasometer, generator, and blower, about sixty feet from the house, and all under ground but the roof, had been in use for lighting the main building for about eleven years up to and including the summer of 1878, but its use was discontinued in

the fall of 1878, and it was not in use at all during the year 1879.

There was an oil-room in the basement of the hotel under the pavilion, about ten by twelve feet, with low ceiling. In this room the lighting material was kept.

The fire originated in the oil-room "about dusk, August 15, 1879." Three persons were in the room at the time—Jacob Constine, James Marrion, and one Schuchardt. The last named was in Walker's employ as night watchman, and had charge of the oil-room. The others were employed at premises about a mile distant from the Locust Grove Hotel, called the Bath Park Hotel, where gasoline was used for lighting the last-named hotel and an adjoining pavilion.

Constine and Marrion were sent by the book-keeper of the Bath Park House to the Locust Grove Hotel to borrow five gallons of gasoline, and each of them carried a wooden pail in which to fetch it. On reaching Locust Grove they saw Walker, who directed Schuchardt to give them the gasoline. Schuchardt took them into the oil-room. He carried a glass lantern with a wire frame around it—"a regular closed stable lamp with wire and then little holes on top." The lamp was lighted.

Schuchardt placed the lantern on the floor and drew fluid from a barrel which was raised on stanchions, a little above the floor. He drew from the end of the barrel, into which a piece of gas-pipe had been placed as a faucet. On pouring into the pails it was found that one of them leaked, and Schuchardt got a five-gallon can into which to pour the oil, and while filling the can there was "a sort of bluish flame and explosion, and the place was full of fire."

The fire spread with great rapidity. Schuchardt was burned to death. Constine was badly burned, and was laid up thirteen weeks. Marrion was burned a little, not much.

The hotel and all the buildings were destroyed by the fire. "In one hour's time or less the building was level with the ground."

There was no conflict of evidence as to the origin of the fire. Walker purchased in New York and had shipped to the

hotel, on August 13, a barrel of kerosene, and a half barrel of benzine containing about 21 gallons, which were received and put into the oil-room under the pavilion on the morning of August 14, the day before the fire. There was evidence tending to show that gasoline, benzine, or naphtha was used in torches for the purpose of lighting the pavilion; and also other evidence that it was intended for use in lighting grounds for a pic-nic.

The plaintiff introduced evidence in rebuttal tending to prove that no gasoline or benzine had been brought to the premises or was kept there. The testimony having been closed on both sides, the defendant's counsel then requested the court to direct the jury to find a verdict for the defendant on the ground that it appeared from the undisputed evidence that there was a violation of the condition of the policy providing that in the use of refined kerosene oil the same must be drawn by daylight, the evidence being undisputed that three persons went into the oil-room with a lighted lamp, and that whatever was drawn there was drawn not by daylight, but by the use of a lighted lamp, the presence of which was the direct cause of the fire. The court refused so to direct the jury, to which refusal the defendant's counsel then and there excepted.

The defendant's counsel requested the court to instruct and charge the jury as matters of law, as follows:

1. That the several conditions contained in the policy respecting the keeping, using, or allowance on the insured premises of the products of petroleum, specified therein, were lawful provisions, and formed a part of the conditions of the insurance, which, if violated, rendered the policy void.

2. That if the jury believed from the evidence that gasoline, naphtha, or benzine were kept, used, or allowed on the insured premises at the time of the fire, whether permanently or temporarily, the plaintiff could not recover, and the defendant was entitled to a verdict.

3. That if the jury believed from the evidence that gasoline, naphtha, or benzine was used in the summer of 1879, previous to the fire, on the insured premises for lighting the pavilion by means of the torches described in the evidence, then the plain-

tiff could not recover, and the defendant was entitled to a verdict.

4. That if the jury believed from the evidence that any fluid product of petroleum used for lighting purposes was actually drawn, after sundown, in the oil-room by the light of a lamp, the flame of which ignited the fumes or vapors of such fluid and caused the fire, then there was a violation of the conditions of insurance, and the plaintiff could not recover, and the defendant was entitled to a verdict. Also, and as a part of the above request, that the permission indorsed on the policy to keep five barrels of kerosene oil did not vary or affect the conditions of the policy in drawing refined oil by daylight; and if the fire was caused by drawing refined kerosene oil after sundown, and in the presence of a lighted lamp, the plaintiff could not recover, and the defendant was entitled to a verdict.

5. That if the jury believed from the evidence that the risk of fire was increased by the actual presence on the insured premises of gasoline, naphtha, or benzine, then the plaintiff could not recover, and the defendant was entitled to a verdict.

6. That, irrespective of the questions raised by the preceding fourth and fifth requests, if the jury believed from the evidence that the fire was caused by the ignition of the fumes of gasoline, naphtha, or benzine in the oil-room, while such gasoline, naphtha, or benzine was being drawn from a barrel or keg, or poured from one vessel to another in the oil-room, then the plaintiff could not recover, and the defendant was entitled to a verdict.

7. That if any of the conditions of the policy were violated by the presence or use of gasoline, naphtha, or benzine on the insured premises, it was immaterial whether or not the plaintiff knew of such violation. If the fact of the violation was established, the defendant was entitled to a verdict.

8. That the permission in the policy to use gasoline gas, the generator, gasometer, and blower to be under ground 60 feet from the main building, no heat to be used in the process, did not authorize the plaintiff, or any one occupying the premises under him, to use gasoline, naphtha, or benzine for lighting the pavilion by the torches described by defendant's witnesses, or

to keep gasoline, naphtha, or benzine in the oil-room for use in such torches.

9. That in weighing the evidence the jury must determine on which side the preponderance of proof lay, and decide accordingly. That the testimony of the plaintiff in his own favor must be scrutinized in view of his interest as plaintiff, and that the evidence of witnesses not discredited or impeached, who swore positively to certain facts as within their own knowledge and actual observation, was not to be overcome by mere negative testimony of other witnesses that such facts were not observed by them at the same time and place.

At the conclusion of the charge, a juror asked the court whether the jury were to consider the matter of drawing oil in the daylight.

The court thereupon charged and instructed the jury that there was no question in the case in reference to the drawing of the oil by daylight, no such question having been made by the pleading; to which ruling and charge the defendant's counsel then and there excepted.

The defendant's counsel then excepted specifically to that part of the charge which instructed the jury that any question arose in the case under the permission in the policy to use gasoline gas.

The defendant's counsel then further excepted specifically to the refusal of the court to charge that if benzine was allowed on the premises at all the plaintiff could not recover, so far as the court did refuse.

The defendant's counsel then further excepted to that portion of the charge which confined the questions in the case to the three questions specified in the charge as being the sole questions which the jury were to consider.

The defendant's counsel then further excepted specifically to that portion of the charge which instructed the jury that if the benzine was brought to the insured premises by Walker for an outside purpose it did not vitiate the policy.

The defendant's counsel then further excepted specifically to that portion of the charge which instructed the jury that the only effect of the question whether torches were used was in

reference to the question of the half barrel of benzine being brought to the insured premises or not.

The defendant's counsel then further specifically excepted to the refusal of the court to charge the several propositions contained in the foregoing second, third, fourth, fifth, sixth, seventh, eighth, and ninth requests on the part of the defendant in the language as requested, and separately to each separate refusal to charge each separate request, so far as the court did so refuse.

In the charge to the jury the Circuit Court stated, in substance, that under the pleadings and upon the evidence there were but three questions for their consideration. The first was, whether in fact the half barrel of benzine testified to had been brought to the premises and stored in the oil-room; if not, the whole defence was taken away and the verdict must be for the plaintiff.

Second. If otherwise, had it been brought over and stored there by the authority of Walker in his management of the premises for his wife under her lease? If it had been brought and stored there by him for an outside purpose, referring to some testimony in reference to its intended use in lighting the pic-nic grounds, then the verdict should be for the plaintiff.

Third. This question was stated by the court, as follows:

"If it was brought there, and brought there by Walker in the course of his management, then would bringing that benzine there and putting it in the oil-room come within what would be expected when the company gave the assured the privilege of using the gasoline gas, the gasometer, generator, and blower to be under ground 60 feet from the main building? It would not come within that, unless you can say that by the common and ordinary mode of the use of such apparatus, as it would be understood by this contract to be used, it was proper to store somewhere else benzine or gasoline for use in the apparatus. If you can see that it would come within that, then that would be written permission to have so much stored there, although it was not to be used for that purpose. And if you find that the benzine was there, and then that Walker got it there, still, if you find that it came within that clause of the

policy, then you may return a verdict for the plaintiff; otherwise, you must return a verdict for the defendant.

"If the defendant has made out these three things, then you must return a verdict for the defendant, and you must find this upon the proof, and not upon any conjecture.

"And I feel bound to say to you that as to the use of a gasometer, generator, and blower, it is a matter with which perhaps you might not be familiar (I am not sufficiently so to know what the ordinary use would be). The only evidence directly is what one of these manufacturers and dealers in such things and familiar with them (I don't remember his name) said; he said the gasometer was used to store the gasoline or benzine, or whichever was used in it. That is all the direct evidence I call to mind on that subject. Still, I submit it to you to say, on the whole, what you think the fact is in this view."

. *Mr. William Allen Butler* for plaintiff in error.

`*Mr. George H. Forster* for defendant in error.—I. There was no error in the charge of the court on the point of the keeping, use, or allowance of benzine on the insured premises. The court said in effect that if it was brought and kept there by the procurement of Walker, acting under his wife's authority in managing the premises as they were to be managed under the arrangement made with Gunther for their use, then it was the act of Gunther; but if brought by a stranger, for a strange and outside purpose, not done in the course of Walker's management as his wife's manager, but for some purpose over which Gunther had no control, then it was not the act of Gunther. This is the law of New York. *Gates* v. *Madison Ins. Co.*, 5 N. Y. (1 Seld.) 469; see also *Stebbins* v. *Globe Ins. Co.*, 2 Hall, 632; *Stetson* v. *Massachusetts Mutual*, 4 Mass. 330; *Waters* v. *Merchants' Ins. Co.*, 11 Pet. 213; *Columbia Ins. Co.* v. *Lawrence*, 10 Pet. 507; *Delano* v. *Bedford Ins. Co.*, 10 Mass. 347, 355; *Patapsco Ins. Co.* v. *Coulter*, 3 Pet. 222; *Williams* v. *Suffolk Ins. Co.* 3 Sumner, 270, 276; *Copeland* v. *Marine Ins. Co.*, 2 Met. (Mass.) 432; *Shore* v. *Bentall*, 7 B. & C. 798, *n.* (b);

*Busk* v. *Royal Exchange Ins. Co.,* 2 B. & Ald. 73; *Shaw* v. *Robberds,* 6 Ad. & El. 75; *Insurance Co. of North America* v. *McDowell,* 50 Ill. 120; *Aurora Ins. Co.* v. *Eddey,* 55 Ill. 213; *Mickay* v. *Burlington Ins. Co.,* 35 Iowa, 174. *Sanford* v. *Mechanics' Mutual Ins. Co.,* 12 Cush. 541, was a case where a tenant, contrary to his lease not to make or suffer any alteration or make or suffer waste, erected furnaces for manufacturing purposes, increasing the risk without knowledge of the assured. It was held that the policy was not void, although it prohibited the insured from altering the building, or increasing the risk. See also *Hynds* v. *Trust Ins. Co.,* 11 N. Y. 554; *Steinbach* v. *Lafayette Ins. Co.,* 54 N. Y. 90; *Shipman* v. *Oswego Ins. Co.,* 79 N. Y. 627.

II. The court did not err in refusing defendants' request to direct a verdict for defendant, but properly refused so to direct the jury. No violation of the policy by the drawing of petroleum after daylight was pleaded in the answer. Defendant made no application to amend; and, as the defence was not pleaded nor made available by amendment, or a motion to amend, the question was not in the case, whether such a defence existed or not. *Hunt* v. *Hudson River Ins. Co.,* 2 Duer, 481; *Dimon* v. *Dunn,* 15 N. Y. 498; *Coda* v. *Rathbone,* 19 N. Y. 37; *Wright* v. *Delafield,* 25 N. Y. 266.

III. The court, having properly charged the jury, was not bound in addition to use the specific language which defendant's counsel had inserted in his requests. There is no valid exception in the case, because the court did not comply with such requests and follow their exact language in his instructions to the jury. The whole charge must be looked at to ascertain if there was any error. It is not just to the court or to the plaintiff to single out a statement from the charge and except to that. Looking at the whole charge the jury were correctly instructed, and there was nothing said to which they can properly except. *Franklin Fire Ins. Co.* v. *Vaughan,* 92 U. S. 516, 519, 520; *Beaver* v. *Taylor,* 93 U. S. 46. When instructions are asked in the aggregate, and there is anything exceptionable in either of them, the court may properly reject the whole. It is the settled law in this court that if the charge

given by the court below covers the entire case, and submits it properly to the jury, such court may refuse to give further instruction. *Indianapolis & St. Louis Railroad* v. *Horst*, 93 U. S. 291, and cases there cited. See also *Transportation Line* v. *Hope*, 95 U. S. 297, 301; and *Worthington* v. *Mason*, 101 U. S. 149.

IV. Defendant took a risk which involved the risk of the use of gasoline and of kerosene. The questions at issue were of fact, and were carefully tried before a jury. There was no error in the construction of the clauses in the policy by the court, as affected by the written language or permission. The importance and effect of such written words appear from the following cases: *Steinbach* v. *Lafayette Ins. Co.*, 54 N. Y. 90; *New York* v. *Hamilton Ins. Co.*, 10 Bosworth, 538; *Harper* v. *Albany Mutual Ins. Co.*, 17 N. Y. 194, 197; *New York* v. *Exchange Ins. Co.*, 9 Bosworth, 424. See also *Townsend* v. *Northwestern Ins. Co.*, 18 N. Y. 168; *Moore* v. *Protection Ins. Co.*, 29 Maine, 97; *O'Niel* v. *Buffalo Ins. Co.*, 3 Comst. 122. As to what is storage, see *New York Equitable* v. *Langdon*, 6 Wend. 623; *Vogel* v. *People's Mutual Ins. Co.*, 9 Gray, 23; *City Ins. Co.* v. *Corlies*, 21 Wend. 367; *Hall* v. *Ins. Co. of North America*, 58 N. Y. 292; *Buchanan* v. *Exchange Ins. Co.*, 61 N. Y. 26; *Cornish* v. *Farm Buildings Ins. Co.*, 74 N. Y. 295; *Franklin Ins. Co.* v. *Vaughan*, 92 U. S. 516; *National Bank* v. *Insurance Co.*, 95 U. S. 673; *Williams* v. *People's Ins. Co.*, 57 N. Y. 274. The written part of the policy shows that the company insured a frame hotel, with a privilege to use gasoline. There was no fraud or misrepresentation in obtaining this privilege. This permission involved the right to buy it and bring it there, and place it in a proper place for use. It was entirely proper for the court to charge the jury as it did, as to what weight they were to give to that clause, and what right there was given under that privilege as to the storage of gasoline. The policy is to be construed with reference to the privilege the defendant so gave in writing, and whatever that privilege gave, its exercise, or the exercise of any part of the privilege, would not be a violation of the printed condition of the policy. The court properly construed the

policy, and the written permission, under the authorities.  And that construction is to be based on what the privilege authorized, and not on its exercise or non-exercise, to a greater or less extent, during part of the time after the policy was issued. *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527, 542; *Putnam* v. *Commonwealth Ins. Co.*, 18 Blatchford, 368.  The most important question in the case relates to the proper construction of the defendant's policy of insurance.  It is as true of policies of insurance as it is of other contracts, that, except when the language is ambiguous, the intention of the parties is to be gathered from the policies.  Lord Mansfield said long ago, that courts are always reluctant to go out of a policy for evidence respecting its meaning.  *Lorraine* v. *Tomlinson*, Doug. 585.  And so, Judge Strong says, are the authorities generally : citing *Astor* v. *Union Ins. Co.*, 7 Cow. 202; *Murray* v. *Hatch*, 6 Mass. 465; *Levy* v. *Merrill*, 4 Greenl. 180; *Baltimore Fire Ins. Co.* v. *Loney*, 20 Maryland, 20, 36.

V. There was no error as to the evidence received.  The admission of even irrelevant evidence, which is not shown to have tended in the least to mislead the jury, is not an error. A verdict is not to be set aside because evidence was admitted at the trial which could have no bearing upon the verdict, unless it was misleading in its tendency.  *Home Ins. Co.* v. *Baltimore Warehouse Co.*, cited above.

MR. JUSTICE MATTHEWS delivered the opinion of the court. After stating the facts in the language reported above, he continued :

The first question to be examined is whether the Circuit Court erred in withdrawing from the jury the right to consider the facts proven as to the drawing of the oil in the oil-room after dark in the vicinity of a lighted lamp, which was the admitted cause of the fire, as constituting a defence to the action under the pleadings.

The tenth paragraph in the answer, setting up a separate and distinct defence, recited two conditions in the policy ; the first, that the assured should not keep any burning fluid without written permission in the policy ; the second, that kerosene,

carbon oils of any description, whether crude or refined, or any other inflammable liquid, "are not to be stored, used, kept, or allowed on the above premises, temporarily or permanently, for sale or otherwise, unless with written permission indorsed on this policy, excepting the use of refined coal, kerosene, or other carbon oil for lights, if the same is drawn and the lamps filled by daylight; otherwise this policy shall be null and void." It then alleged a breach of these conditions, in substance, as follows: that without the written permission of the defendants, indorsed on said policies or otherwise, there were stored, used, kept, and allowed on the insured premises, benzine or benzole, or other inflammable burning fluids or liquids, prohibited by said policies, and that the fire referred to in the complaint originated therefrom and was caused thereby.

It is true that the answer does not specifically set out as part of the defence that kerosene was kept on the premises to be used for lights, but that, in breach of the condition which permitted such use, it was drawn after dark and with a lighted lamp near; but the right to keep it and use it in the manner specified in the condition is an exception from the general prohibition, which forbids the mere keeping of it without written permission; so that, strictly speaking, an averment that the article was kept and used on the premises, in violation of the condition, includes the use of it, otherwise than for lights, and the drawing of it otherwise than by daylight. Under the allegations of the answer, although not so definite and certain as might have been required, upon motion made in due time, it seems to us it was competent for the defendant to prove and rely upon any keeping and use of burning fluid prohibited by the conditions set out.

Whatever obscurity there was in pleading the defence, considered apart from the facts subsequently disclosed in evidence, nevertheless, all the testimony necessary to its establishment was offered and admitted without objection. It was offered and admitted as tending to prove that there had been a breach of the conditions of the policy; and the whole matter of the defence was covered by the testimony, on examination and

cross-examination of the witnesses, both on the part of the defendant in chief and on that of the plaintiff in rebuttal. On the conclusion of the testimony on both sides the matter now insisted on was specially called to the attention of the court by a request on the part of the defendant's counsel to direct a verdict for the defendant on that ground alone, when, if it was a matter of surprise to the opposite party, opportunity for meeting it might still have been given; or, if the pleadings were considered not to be sufficiently explicit, an amendment might have been required and made. The request was refused, and it does not appear from the record to have been on the ground that the defence was not within the issues; but the refusal was absolute and unqualified. We refer to it not for the purpose of intimating that the court was bound to grant the request, but because we think the matter ought to have then been either submitted to the jury or put in shape for such submission, if the rights of the adverse party required any change in the pleadings, or opportunity for the production of other evidence. By the course actually taken the defendant was deprived of the benefit of a defence, legitimately arising upon the evidence actually in the case, admitted without objection; and this, we think, was contrary to the practice established under the laws of New York, as appears from the cases cited of *N. Y. Cent. Ins. Co.* v. *Nat. Protection Ins. Co.*, 14 N. Y. 85; *Williams* v. *Mech. & Traders' Fire Ins. Co.*, 54 N. Y. 577; and *Williams* v. *People's Fire Ins. Co.*, 57 N. Y. 274.

The New York Code of Civil Procedure, which furnishes the rule of practice in such cases, is explicit on the point. In § 539 it is provided that "a variance between an allegation in a pleading and the proof is not material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defence upon the merits. If a party insists that he has been misled, the fact and the particulars in which he has been misled must be proved to the satisfaction of the court. Thereupon the court may, in its discretion, order the pleading to be amended upon such terms as it deems just." And § 540 declares that, "when the variance is not material, as prescribed in the last section, the court may direct the fact to be found

according to the evidence, or may order an immediate amendment without costs."

There are other errors, however, in the charge to the jury, equally fatal to the judgment, which, as the case must be remanded for a new trial, it becomes important to point out.

The Circuit Court charged the jury, in substance, that it was not a breach of the conditions of the policy if they should find a half barrel of benzine was stored by direction of Walker in the oil-room, unless they should also find that he acted by the express or implied authority of the assured; that is, unless in doing so he was acting in the management of the property as the agent of his wife, and within the limits of the authority conferred upon him for the purpose of managing the property according to the terms and purposes of her tenancy; and accordingly the jury was told that if he had brought the prohibited article on the premises, not for the legitimate use of the hotel, but for an outside purpose, it constituted no defence. The outside purpose referred to was suggested by some testimony, that the benzine was brought for the purpose of being used in lighting an adjacent grove for a pic-nic. Whether this use was for the entertainment of the guests of the hotel, or to attract custom, does not appear from the evidence; but, in any view, we think the construction of the policy, on which the charge to the jury was based, was erroneous.

One of the conditions of the policy is, that if the assured shall keep or use any of the prohibited articles without written permission, it shall be void; another is, that the articles named "are not to be stored, used, kept, or allowed on the above premises, temporarily or permanently, for sale or otherwise, unless with written permission indorsed on the policy," &c.

A violation of these prohibitions by any one permitted by the assured to occupy the premises, is a violation by the assured himself. The company stipulates that it will not assume the risk arising from the presence of the articles prohibited, and if they are brought upon the premises in violation of the policy by one in whose possession and control the latter have been placed by the insured, he assumes the risk which the company has refused to accept. In our opinion the defendant-

in error was chargeable with the acts of Walker, if he brought upon the insured premises and stored in the oil-room any of the prohibited articles, although they were not intended to be used on the premises, but for lighting a neighboring grove for a pic-nic. Walker was in no sense a stranger or a trespasser. With his wife he was in the lawful occupation of the premises, and, with the implied assent of the insured at least, was entrusted with the control and management of them. And under the terms of the conditions in this policy, it must be held that the insured shall suffer the consequences of Walker's acts in doing that for which, if done, the company had stipulated that they would not be liable. The insured engaged that the prohibited thing should not be done, and when he committed the control of the insured premises to another the latter became his representative, for whom he must answer as for himself.

This construction of such a condition is well supported by authority. *Kelly* v. *Worcester Mutual Fire Insurance Co.*, 97 Mass. 284, 287. In this case it was held that "a policy of insurance obtained upon a building by the owner, and containing a proviso that it shall be void if the buildings shall be occupied or used for unlawful purposes, is avoided by a tenant's use of the building for an unlawful purpose, even if without the owner's knowledge." In distinguishing the case from those cited by counsel adversely, the court said: "In some of the cases cited for the plaintiff the prohibited use was not so constant, or habitual, or of such a nature as to fall within the terms of the provision, and in the others the knowledge or assent of the assured was expressly required in order to avoid the policy."

In New York it has been the settled law since the case of *Duncan* v. *Sun Fire Insurance Co.*, 6 Wend. 488. In *Mead* v. *Northwestern Ins. Co.*, 7 N. Y. (3 Seld.), 530, 533, it was said, in such a case: "It is equally unimportant that the respondent was ignorant that such business was carried on. The question whether a warranty has been broken can never depend upon the knowledge or ignorance or intent of the party making it, touching the acts or the fact constituting the breach." *Matson* v. *Farm Buildings Ins. Co.*, 73 N. Y. 310.

In *Fire Association* v. *Williamson*, 26 Penn. St. 196, 198, the Supreme Court of Pennsylvania said: "Neither it is material that the landlord did not know that his tenant kept gunpowder. His contract with the insurance company was that it should not be kept without permission, and it was his business to see that his tenants did not violate the contract in this respect." *Diehl* v. *The Adams Co. Mutual Ins. Co.*, 58 Penn. St. 443; *Howell* v. *Baltimore Equitable Society*, 16 Maryland, 377.

The Circuit Court also erred in the charge to the jury, that, under the circumstances disclosed by the evidence, it was no breach of the conditions of the policy to have in the oil-room a quantity of gasoline, although not intended for use in the gas apparatus, the use of which had in fact been discontinued, if the oil-room was a place were such fluid might have been properly stored, when intended for use in the apparatus.

The only direct evidence in the case, as to the usual and suitable place for the keeping of gasoline when used in such an apparatus, was, that it should be deposited at once in the apparatus itself, one part of which is a generator where atmospheric air is carbonized by being forced through the gasoline. But waiving any question on that point, it is clear that the privilege indorsed on the policy, in the following terms: "To use gasoline gas, gasometer, blower, and generator being underground about sixty feet from main building in vault. No heat employed in process;" did not sanction the keeping, using or storing of gasoline, or its equivalent, burning fluid or oil, except for actual use in that gas apparatus. There is no express permission to keep gasoline given in the words of the privilege. Such permission is implied only when and because the use of gasoline is necessary to the enjoyment of the privilege. Otherwise and for all other purposes and uses, it is expressly prohibited. The implication cannot be extended beyond the necessity for a fair and reasonable exercise of the privilege granted.

But the evidence on the trial was uncontradicted, that, at the time of the fire and for nearly a year previously, the use of the gas apparatus had been discontinued. The plaintiff below him-

self testified that it was not used during the season of 1879, and that its use had been purposely discontinued. And the privilege indorsed on one of the policies " to use kerosene oil for lights, lamps to be filled and trimmed by daylight only," and " to keep not exceeding five barrels of kerosene oil on said premises," was dated September 17, 1878, at the time when, according to the testimony of the plaintiff, the use of the apparatus for lighting the premises by means of gas from gasoline ceased at the end of the season of 1878.

It is, of course, not to be denied that this did not supersede the privilege to use the gasoline apparatus, and that this privilege had not been otherwise exhausted or withdrawn. The insured had the right at any time to resume its exercise, and, in doing so, would have been justified in obtaining, keeping, storing, and using, in the accustomed manner, the necessary quantity of gasoline for supplying it. This is implied in the grant of the privilege. But if the privilege itself is not actually exercised, no such implication arises, and the prohibition against gasoline, according to the terms of the condition, must have full effect. It was error, therefore, in the court to instruct the jury that the naked privilege to use a gas apparatus, not actually exercised, nor intended to be exercised, but in fact abandoned, justified the insured in keeping and storing gasoline, in any quantity, in any place, or for any time.

*The judgment of the Circuit Court is reversed, and the cause is remanded, with directions to grant a new trial.*