## FISCHER v. LONDON & L. FIRE INS. CO.

### (Circuit Court, D. Kentucky. January 20, 1897.)

FIRE INSURANCE—CONDITIONS—ESTOPPEL—WAIVER.

A policy of fire insurance issued by defendant to plaintiff upon merchandise stipulated that the policy, unless otherwise provided by agreement indorsed thereon, should be void "if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed, on the above-described premises, * * * gasoline, * * *" and that no representative of the company should have power to waive any provision except, in certain cases, by indorsement. In an action on the policy it was alleged in the reply that while plaintiff, a dealer in stoves, had been in the habit, according to general custom, of bringing a small quantity of gasoline to his store from time to time to illustrate the operation of gasoline stoves, this practice and custom were well known to defendant's agent who took the application and issued the policy, and also, both before and after its issue, to the local board of underwriters of which defendant or its agents were members. *Held* that, under the terms of the policy, these facts could not operate against the defendant either as estoppel or waiver.

This was a suit by John Fischer against the London & Lancashire Fire Insurance Company to recover for the loss of a stock of goods.

John Barret and Mason Barret, for plaintiff.
A. E. Willson and Morris B. Gifford, for defendant.

BARR, District Judge.  This is a suit on a policy of insurance issued by the defendant to the complainant on a stock of goods located in the city of Louisville, for one year, from the 7th October, 1895, to the 7th October, 1896. A total loss is alleged of the stock of goods, and the suit is for the recovery of $3,000, the entire insurance. The policy covered the following property:

"On stock of merchandise, principally hardware and cutlery, stoves and tinware, and materials used in his business, contained in frame metal-roof building occupied by assured as dealer in above-described goods, with privilege to manufacture tinware by hand power, and upper floors occupied and known as 'Highland Hall,' and situate No. 1,627 Baxter avenue, Louisville, Ky."

And among other provisions in the policy is this:

"This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage; or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed, on the above-described premises, benzine, benzole, dynamite, ether, fireworks, gasoline, Greek fire, gunpowder, exceeding twenty-five pounds in quantity, naphtha, nitroglycerin, or other explosives, phosphorus, or petroleum, or any of its products, of greater inflammability than kerosene oil of the United States standard (which last may be used for lights and kept for sale, according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight, at a distance not less than ten feet from artificial light)."

And another provision of the policy is this:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of

this policy, except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

In the original petition the plaintiff has alleged, among other things:

"That no illuminating gas or vapor was generated in the said described building or adjacent thereto for use therein; that there was not kept, used, nor allowed, on said premises, benzine, benzole, dynamite, ether, fireworks, gasoline, Greek fire, gunpowder, exceeding twenty-five pounds in quantity, naphtha, nitroglycerin, or phosphorus, or petroleum, or any of its products of greater inflammability than kerosene oil of the U. S. standard."

The defendant, in its answer, denied "that there was not kept, used, or allowed, on the said described premises, gasoline"; and, in an amended answer, defendant says:

"In addition to keeping, using, and allowing gasoline on said premises, did keep, use, and allow on said premises, in close and hazardous proximity to said gasoline, large quantities of turpentine and kerosene oil, whereby the hazard under said policy was increased, and the said property was greatly endangered by fire; and it says that it was not provided by agreement indorsed on the said policy, or added to it, that there should or could be kept, used, or allowed turpentine or kerosene oil, or either of them, in close proximity to gasoline, nor did the defendant in any manner consent or assent thereto; nor had this defendant notice or knowledge or information that gasoline was kept, used, or allowed on said premises, or that turpentine was kept, used, or allowed, or kerosine oil was kept close by in said hazardous position to the gasoline on said premises."

In the reply, the plaintiff denied—

"That it was expressly stipulated in said policy that the entire policy, unless otherwise provided, indorsed on it, or added to it, should be void if the insured should permit to be kept, used, or allowed, on said premises, gasoline; and denies that this plaintiff did, without the knowledge or consent of the defendant or its agent or agents, or at all, keep, use, or allow, or permit to be kept, used, or allowed, on said premises, large quantities of gasoline, in violation of any provision or stipulation or condition of said policy of insurance sued on, or at all."

By amended reply, the plaintiff alleges as follows:

"Denies that he ever kept, used, or allowed gasoline in the premises insured in the policy herein sued on, except in very small quantities, which was used as follows, namely: Plaintiff, like most other dealers in stoves and tinware, kept for sale in his said store stoves using gasoline as fuel; and it is customary, usual and necessary, as well known to defendant and its agents at the time, for dealers in stoves and tinware to keep and sell stoves using gasoline as a fuel in their stock, and to explain and exhibit the operation of such stoves by a stove consuming gasoline used for that purpose, and for that purpose to bring in from the place where a small quantity of gasoline was kept, which was not in or on the premises insured, a small quantity of gasoline for that purpose; and that N. H. Rehkopf, the general agent of defendant, who issued the policy herein sued on to plaintiff, and who took the application therefor, came to said store to take the application, was a customary and frequent visitor to said store, before the said policy was issued to plaintiff, and personally knew of the custom of plaintiff and other dealers in stoves and tinware, dealing in such stoves, using gasoline, and exhibiting and explaining such stoves, by the use of a small quantity of gasoline, to purchasers. Plaintiff, for further reply, states that the defendant, the London & Lancashire Fire Insurance Company, of Liverpool, England, is a member, or its agents are members, of the Board of Underwriters of Louis-

ville, Kentucky, a fire insurance association formed for the purpose of supervising fire insurance rates, risks, etc.; and that said Board of Underwriters and its agents were, in that regard and for that purpose, the agents of the defendant; and that said Board of Underwriters and agents employed by it for the defendant and other companies associated in said Board of Underwriters did, both before and after the issue of the policy herein sued on by defendant to plaintiff, inspect and examine the property of plaintiff insured in the policy herein sued on, and the premises on which the small quantity of gasoline aforesaid was kept at times; and that the defendant did, through said agents and inspectors of the Board of Underwriters, know and was well acquainted with the custom of plaintiff in keeping such stoves consuming gasoline in stock for sale, and exhibiting the same, and in keeping small quantities of gasoline in a shed not part of the insured premises, at a great distance, to wit, fifty feet, therefrom; and the plaintiff denies that he ever kept, used, or allowed, on the premises mentioned in the policy of insurance herein sued on, large quantities or any quantity of gasoline, except the temporary use of the same, according to the custom of all dealers in stoves consuming gasoline, as hereinbefore expressly set forth, and denies that he kept or allowed on said premises kerosene oil excepting as allowed by the policy."

This amended reply is demurred to, and that is the question now submitted. It will be observed from this statement that the defense made is a violation of the provision in regard to the use of gasoline and other oils that are prohibited, and that the reply seeks to set up an estoppel by knowledge and conduct against this plea. There is no allegation here that the use of gasoline was the cause of the fire, or in any way brought it about; so that the simple question presented is whether the knowledge of the general agent of the fact of the assured using gasoline in the manner set out, and the further fact that the Board of Underwriters of Louisville, of which the defendant company was a member, had knowledge of the fact that the assured used, on the premises, gasoline as described, both before and after the issuing of the policy, is sufficient to make an estoppel or a waiver.

We think the principles announced by the supreme court in the case of Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 462, 14 Sup. Ct. 397, are decisive of this demurrer. In that case the terms and conditions of the policy were that:

"This policy shall be void and of no effect if, without notice to the company and permission therefor indorsed hereon, * * * the premises shall be used or occupied so as to increase the risk, * * * or if mechanics are employed in building, altering, or repairing premises named herein, except in dwelling houses, where not exceeding five days in one year are allowed for repairs."

It appeared that the plaintiff, without the written consent of the defendant, and without its knowledge, employed carpenters and brick masons, and reconstructed and enlarged the vault, and also the foundations were reconstructed and enlarged to correspond with the enlargement of the vault. The time in which the mechanics were employed was five or six weeks, but that was before the fire, and the fire was not caused by anything that was done by the mechanics or in the reconstruction that was made, and this was claimed to have avoided the policy under its terms. The supreme court decided that the policy was avoided, and in the opinion (page 462, 151 U. S., and page 381, 14 Sup. Ct.), among other things, said:

"Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies embodying the agreement of the par-

ties. For a comparatively small consideration, the insurer undertakes to guaranty the insured against loss or damage, upon the terms or conditions agreed upon, and upon no other; and, when called upon to pay in case of loss, the insurer therefore may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and, in order to recover, the assured must show himself within those terms; and, if it appears that the contract has been terminated by the violation on the part of the assured of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made."

See, also, Lozano v. Insurance Co., 78 Fed. 278; Insurance Co. v. Gunther, 116 U. S. 113, 6 Sup. Ct. 306.

The knowledge of Rehkopf, the general agent, of the custom of merchants in the matter of using and having on the premises gasoline, and the fact that he knew at the time of issuing and delivering the policy that the plaintiff had been in the habit of using gasoline in that way, cannot have any effect either as an estoppel or a waiver, since the terms of the policy are that, "notwithstanding any usage or custom of trade or manufacture," they should not use gasoline, etc.; nor does the allegation of the reply that the Board of Underwriters of Louisville, Ky., had knowledge, both before and after the issuing and delivering of the policy, of this custom or habit of the plaintiff, have the effect either of an estoppel or to waive this provision of the policy, since the language of the policy in express terms required any modification or change in the terms of the policy to be in writing, even though the Board of Underwriters of Louisville be considered either the special or general agent of the defendant company. Its knowledge of what the assured was doing—of the general custom —could not have the effect of either a waiver or of an estoppel.

In West End Hotel & Land Co. v. American Fire Ins. Co. of New York, reported in 74 Fed. 117, 118, the court say:

"The counsel of plaintiff further insisted that as the defendant, under the terms of the policy, had the right to cancel the contract for any unauthorized or unapproved act on the part of the plaintiff, honesty and fair dealing required the defendant to promptly cancel the policy, and return part of the premium to the extent of the relieved risk; and, as this was not done, the plaintiff has reasonable grounds for supposing that defendant acquiesced in the introduction of gasoline fixtures within the laundry building; and plaintiff was thus induced to believe that no further effort was necessary to ratify the insurance in the uncanceled policy, or to obtain other insurance on the premises. As soon as gasoline was kept and used upon the insured premises without the consent or approval of the defendant, the policy was avoided by the express terms of the contract of the parties; and the defendant was under no legal or moral obligation to formally cancel the policy, and return part of the premium. The risk had for a time been incurred, and the policy had been avoided, by the voluntary and illegal act of plaintiff. The defendant did nothing to induce the commission of such illegal act, but, on the contrary, had expressly provided how such act of forfeiture could have been prevented. Upon the most liberal construction and application of the principles of honesty, justice, and fair dealing,

I cannot conceive of any phase of this case that would entitle the plaintiff, which paid $50 as premium for an ordinary risk, to recover $2,500 for the loss of property occasioned by the voluntary breach of its plain and express promissory warranty, without any fault on the part of the defendant, and without the payment of premium for an extrahazardous risk."

We conclude, therefore, that the allegations of the reply as amended do not make out a case of waiving this obligation of the policy, nor do they estop the defendant from pleading it. The demurrer should be sustained, and it is so ordered.