THE KINGS COUNTY FIRE INSURANCE COMPANY

v.

CHARLES F. SWIGERT.

1. INSURANCE—KEEPING HAZARDOUS SUBSTANCES—GASOLINE.—Where a policy of insurance prohibited the assured from keeping upon the premises without written permission, "petroleum," etc., the prohibition will include gasoline, a product of petroleum, although gasoline is not in terms named as one of the prohibited substances.

2.  Kerosene and refined coal or earth oils.—Gasoline, like kerosene, being a refined coal or earth oil, and "refined coal and earth oils" being included in the class prohibited as "extra hazardous," gasoline would also be included within the prohibition.

3.  Knowledge by insurer or agent of the keeping of prohibited articles.—If the insurer or its agent, at the time of making the insurance, had knowledge of the keeping of such prohibited articles upon the premises, then the insurer would be precluded from setting up in avoidance of the policy a fact of which its agent had knowledge at the time the policy was issued.

4.  Broker not agent of insurer.—One who solicits insurance of the assured, and afterward procures a policy to be issued by the insurer, is not an agent of the latter.  Nor does the fact that the insurer places its policy in the hands of the broker for delivery, make him an agent or give rise to a presumption of agency, except when there have been no previous dealings between the broker and the assured.  If in fact, before the policy is issued, the assured has had dealings with the broker, or the latter is in any way clothed by the assured with the credentials of an agency, the insurer may treat him as the agent of the assured.

Appeal from the Circuit Court of Cook county; the Hon. Kirk Hawes, Judge, presiding.    Opinion filed November 29, 1882.

This was an action of assumpsit, brought by Charles F. Swigert against the Kings County Fire Insurance Company, to recover for a loss under a policy of insurance against fire. By said policy the defendant insured the plaintiff, for a certain term, against loss or damage by fire, to the amount of $750, to wit: $200 on his one story and basement brick and frame building, situate, etc., in the city of Chicago; $375 on his saloon and restaurant, furniture and fixtures, show cases, gas fixtures, furnace and connections, and bar glassware; and $175 on his stock of wines, liquors, tobacco and restaurant supplies, all contained in said building.   Among the provisions and cond'tions contained in, or attached to and forming a part of said policy, were the following:

"If the above mentioned premises at any time during the period for which this policy would otherwise continue in force, shall be used for the purpose of carrying on therein any trade or occupation, or for storing or keeping therein any articles, goods or merchandise, denominated hazardous, or extra hazardous, or specially hazardous, in the second class of

the classes of hazards annexed to this policy, from thenceforth, so long as the same shall be so used, this policy shall be of no further force or effect.

"Whenever gunpowder, or any other article subject to legal restriction, shall be kept on said premises in quantities greater than the law allows, or in a manner different from that prescribed by law, unless said use or keeping is specially provided for herein, this policy shall be null and void.

"If any person effecting insurance in this company, shall make any misrepresentation or concealment touching the risk to be assumed, or during the existence of this policy or any renewal thereof, the risk shall be increased by any means within the control of the assured, or by the occupation of the premises for more hazardous purposes than are permitted by this policy, * * * * this policy shall be void.

"It is agreed that the person or persons, if any, other than the assured, who have procured this insurance to be taken by this company, shall be deemed to be the agent or agents of the assured and not of this company, in any transaction relating to this insurance."

In the classification of hazards annexed to the policy, the first and second classes were as follows:

"Petroleum, benzine, benzole and naphtha, are classed specially hazardous, and if kept on the premises described in this policy, will vitiate this insurance, unless privilege to keep such articles shall be indorsed in writing thereon.

"Kerosene and other refined coal or earth oils are classed extra hazardous, when kept in quantities not exceeding five barrels; but when kept in quantities exceeding five barrels, are classed specially hazardous."

The premises insured were occupied and used by the plaintiff as a saloon and restaurant, and the evidence shows that at the date of the policy and from thence up to and at the time of the loss, the plaintiff kept gasoline on said premises, and used it for cooking oysters, and also in a carburetter or apparatus for manufacturing illuminating gas, attached to his gas meter. It appears that he usually kept a barrel of gasoline on the premises in the area under the sidewalk, and also

a can containing from five to ten gallons in the restaurant under the lunch counter.   On the day of the fire, three men in the plaintiff's employ, undertook, by his direction, to lower a barrel of gasoline into the basement, and while they were doing so, the barrel fell and burst, and the gasoline, running over the floor, took fire and destroyed the building and contents.

The policy was obtained for the plaintiff by one Kennedy, a member of the firm of E. E. Ryan & Co., insurance agents. The property insured, had been previously owned by Gewee & Davis, and while they were owning it, the plaintiff, acting as their agent, applied to Kennedy for $1,500 insurance thereon, and he thereupon drew up a paper, stating, in substance, that insurance was wanted by Gewee & Davis in the sum of $750 on said property for the term of one year, signing to said statement the name of his firm as applicants. With this paper he went to one Waller, the defendant's general agent at Chicago, procured from him a policy for that amount, and delivered it to the plaintiff, receiving from him the premium and paying it to Waller, after deducting his commissions.   A similar policy for the same amount was also at the same time obtained by Kennedy in another company.

While these policies were in force, the property insured was purchased by the plaintiff, and for the purpose of getting the insurance transferred to himself, he delivered said policies to Kennedy and requested him to get the transfer made.   Kennedy thereupon drew up another application, stating, in sub· stance, that $750 insurance on said property was wanted by the plaintiff for the unexpired portion of the term covered by the former policy, and delivered it together with the former policy to Waller, whereupon Waller issued and delivered to Kennedy for the plaintiff the policy in suit, the consideration therein expressed being the cancellation of the former policy.

E. E. Ryan & Co. appear to have been the agents of one or more insurance companies doing business in Chicago, but there was no evidence tending to show that they were authorized to act for the defendant, but the evidence on the contrary was express, that they were *not* and never had been

in fact employed as its agents. It appears, however, that they, as well as other insurance agents in Chicago, made a practice of obtaining insurance upon risks which for any reason they did not wish to insure in their own companies, from the agents of other companies, keeping, as between themselves and such agents, a mutual account of premiums, upon which monthly settlements were made; and that by such course of dealing with Waller, E. E. Ryan & Co. had frequently obtained policies in the defendant company prior to the transactions in question in this suit.

There was evidence tending to show that gasoline is an oil obtained from petroleum, and that it is one of the most volatile and inflammable of the products derived from that substance; and also that keeping it on the plaintiff's premises greatly increased the risk. There was also evidence tending to show that Kennedy, at the time he obtained the policy in suit, had notice that the plaintiff was keeping and using it on said premises in the manner shown by the evidence.

The defendant also read in evidence an ordinance of the city of Chicago, declaring it to be unlawful to keep for sale or on storage, any refined carbon oil, kerosene, or other products for illuminating purposes, of coal, rock or earth oils, excepting such as would stand a certain fire test; and also declaring it unlawful for any person, firm or corporation to manufacture any gas for illuminating purposes, from any substance whatever, within the limits of said city, without the permission of the common council of the city.

The evidence shows that gasoline will not stand the fire test prescribed by the ordinance; and there was no evidence tending to show any permission by the common council of the city of Chicago to the plaintiff, to manufacture gas for illuminating purposes.

The court, at the instance of the plaintiff, gave to the jury the following instructions:

" If the jury believe from the evidence in this case, that the witness, Kennedy, of the firm of E. E. Ryan & Co., examined the premises in question, with a view of placing insurance thereon, representing himself to be an insurance agent, and afterward returned with a policy of insurance properly

executed, ready for delivery, either personally or through some member of the firm of E. E. Ryan & Co. to the assured, who accepted the policy and paid the premium in good faith, under the belief that such person was an agent clothed with full power of defendant company who issued the policy, which premium was afterward received, paid to, and accepted by the defendant company, the company will be bound by the payment to such person, and estopped by its own act in giving such person the policy, to dispute the right of such person to act as its agent in that behalf, and it makes no difference whether the premium was paid in money or by the surrender and cancellation of a former existing policy made by defendant company.

2. "The court instructs the jury that where it is known to the insurance agent at the time the policy is issued that the assured kept an article prohibited by the terms of the policy, and intends to keep it in the building assured, the keeping it will not render the policy void, whether permission to keep it was indorsed, or intended or neglected to be indorsed; and if the jury believe from the evidence in this case that the agent of the defendant, at the time the policy introduced in the evidence was made, dated February 13, 1879, knew that gasoline was kept on the premises in question, and that the assured intended to keep such article for the purpose of lighting and cooking only, and not in store or for sale, then such keeping or use would not render the policy sued upon void, even although the jury may believe that said policy prohibited the keeping or use of said article on the premises, as that the condition of the policy was made solely for the benefit of the company, and might be waived by the company by parol."

The defendant asked the court to give to the jury, among other instructions, the following:

1. "The jury are instructed that, by the condition in the policy sued upon in this case, in which petroleum is forbidden to be kept on the premises without the written consent of the company, it was clearly the intention of the company to avoid the risk of fire from the dangerous and explosive elements of petroleum, and if the jury believe from the evi-

dence that the gasoline kept by the plaintiff during the life of said policy on said premises, was made of petroleum, and that it contained the most explosive and dangerous elements of the petroleum from which it was made, then said condition forbidding petroleum to be kept on said premises, without the written consent of the company, was broken by the plaintiff and he can not recover.

This instruction the court gave to the jury, after modifying it by adding thereto the following:

" Unless you further find from the evidence, that the agent of the company had notice of the fact that gasoline was to be used on the premises by the plaintiff, at the time the insurance was effected and policy issued."

The defendant also asked the following instruction:

8. " The jury are instructed that if they believe from the evidence that the plaintiff, during the life of the policy of insurance sued upon in this case, was in the habit of making gas for illuminating purposes on the premises insured by said policy, from gasoline, without first having obtained permission so to do from the common council of the city of Chicago, then the jury must find for the defendant."

This instruction the court gave to the jury, after modifying it by adding thereto the following:

" Unless you further believe from the evidence that the agent of the company had notice of the fact that the plaintiff was using gasoline upon the premises."

The defendant also asked the court to give to the jury the two following instructions:

11. " The jury are instructed that if they believe from the evidence that during the life of the policy sued upon in this case, the plaintiff stored gasoline on the premises insured by said policy, then they must find for the defendant.

12. " The jury are instructed that if they believe from the evidence that the plaintiff during the life of the policy sued upon, was in the habit of storing upon the premises insured by said policy, any products for illuminating purposes, of coal, rock or earth oils, excepting such refined oils as would stand a fire test of 110 degrees, Fahrenheit, according to the

method of John Tagliabue, then the jury must find for the defendant."

The court gave these instructions to the jury after modifying them by adding to each of them the following:

" Subject, however, to the modification attached to the first instruction."

Proper exceptions to the giving of the plaintiff's instructions, and to the modification of the defendant's instructions. were preserved by the defendant.   The jury thereupon found the issues for the plaintiff, and assessed his damages at the full amount of the policy and interest; and the court after overruling the defendant's motion for a new trial, gave judgment on the verdict in favor of the plaintiff.

Mr. H. J. Peet, for appellant; that the keeping of gasoline or other hazardous substance was a fact not known to the insurer, and avoided the policy, cited Wood on Insurance, 380; McFarland v. Peabody Ins. Co. 6 W. Va. 434.

The broker was the agent of the assured and not of the insurer: Lycoming Ins. Co. v. Rubin, 79 Ill. 402; Ben Franklin Ins. Co. v. Weary, 4 Bradwell, 78; Lycoming Ins. Co. v. Ward, 90 Ill. 545.

Mr. James Springer, for appellee; that gasoline, not being mentioned among the prohibited articles, is not included under the rule that an expression of one thing is an exclusion of all others, cited McWilliams v. Morgan, 61 Ill. 93.

The broker was the agent of the insurance company: Com. Ins. Co. v. Ives, 56 Ill. 402;   Reaper City Ins. Co. v. Jones, 62 Ill. 458;   Com. Ins. Co. v. Wehlman, 48 Ill. 313;   Com. Ins. Co. v. Robinson, 64 Ill. 265; Lycoming Ins. Co. v. Jackson, 83 Ill. 302;   Lycoming  Ins. Co. v. Ward, 90 Ill. 545; Fame Ins. Co. v. Thomas, 10  Bradwell, 555.

Bailey, P. J.   In this case the fact seems to be undisputed that the plaintiff, at the date of the policy in suit, and from that time up to the date of the loss, kept and used gasoline in considerable quantities on the premises insured, and the question is, whether his doing so vitiated his policy.

While gasoline is not mentioned by name, or the keeping or use of it on the premises forbidden in terms, yet, we think, it can scarcely be doubted that the language of the policy, when interpreted in the light of the evidence, includes gasoline among the articles which the plaintiff was prohibited from keeping or using.

By the first specification of hazards contained in the conditions annexed to and forming a part of the policy, petroleum, benzine, benzole and naphtha, are classed as "specially hazardous," and it is there provided that keeping them on the premises without special permission should vitiate the policy. Evidence was introduced showing that gasoline is a product of petroleum, it being one of the most inflammable and explosive of the oils obtained from that substance. Crude petroleum consists of a number of different oils, all more or less volatile, which are separated from each other by a process of distillation, and of these, gasoline, being the most volatile, and consequently the most explosive, is the one driven off at the lowest temperature. We are inclined to the opinion that the prohibition against keeping petroleum on the premises was, *ex vi termini*, a prohibition against keeping this, the most dangerous of the several oils of which that substance is composed.

But there is a further condition that keeping on the premises any article denominated hazardous or extra hazardous, should avoid the insurance, and by the second specification of hazards, "kerosene and other refined coal or earth oils," when kept in quantities not exceeding five barrels, are classed as "extra hazardous." That gasoline is like kerosene, a refined coal or earth oil, is abundantly shown by the evidence, and being kept, as is shown, in quantities less than five barrels, was, according to the classification adopted by the policy, an "extra hazardous" article, and so within the terms of the condition.

The avoidance of the policy by reason of the breach of this condition is sought to be obviated, however, by showing that at the time the policy was issued, the insurance company, through its agent, had notice that gasoline was being used on the premises in the manner shown by the evidence, and is

thereby estopped from setting up or availing itself of such breach. The policy was obtained for the plaintiff by Kennedy, and the evidence tends to show that, before applying for it, Kennedy made a personal examination and survey of the premises and was fully in formed of the plaintiff's, keeping gasoline thereon, and of the various uses to which he was applying it. If, then, Kennedy was in fact the agent of the defendant, or if, under the circumstances of this case, he should, as between the parties, be deemed to be such agent, the defendant, upon principles of law now well established, must be held to be precluded from setting up in avoidance of the policy, a fact of which its agent had knowledge at the time the policy was issued.

There is no evidence of any employment by the defendant of either Kennedy or his firm to act as its agents, and so far as there is any evidence on that subject, it shows affirmatively that the relation of principal and agent did not exist, and never had, in fact, existed between the defendant and them. They were insurance agents in the employ of one or more insurance companies, the defendant not being of the number. So far as they are shown to have dealt with companies other than those by which they were employed as agents, they dealt as insurance brokers. They solicited applications for insurance from parties desiring to be insured, and having obtained such applications, took them to the agents of the companies in which they saw fit to place the insurance and obtained policies thereon. These policies they afterward delivered to their customers, collecting from them the premiums, and transmitting the same to the agents of the proper companies after deducting their commissions. In this way, and in this way only, are they shown to have had dealings with the defendant.

It is claimed, however, that the defendant, by placing its policy in Kennedy's hands, clothed him with such a badge of agency as must be held to raise a conclusive presumption in favor of the plaintiff that he was an authorized agent of the defendant. This circumstance alone might doubtless give rise to a presumption of agency, but such presumption can arise only where there have been no previous dealings between the broker and the assured, from which a contrary presumption

arises.    If, before the company places the policy in the
broker's hands, he is in fact employed by the assured as his
agent to procure for him the insurance, or is in any way
clothed by the assured with the credentials of an agency for
him, the company may deliver him the policy without being
exposed to any presumption that in doing so it is making him
its own agent.

The evidence here tends to show that, in case both of the
policy in suit and of the previous policy, Kennedy was act-
ually employed by the plaintiff to obtain the insurance, be-
fore any application was made by him to the defendant's agent
for a policy.    In case of the first policy, Kennedy came to the
plaintiff, who was then acting as the agent of Gewee & Davis,
the owners, in reference to insuring the property, and a nego-
tiation thereupon ensued between Kennedy and the plaintiff,
which resulted in Kennedy's being employed to obtain the
desired insurance.  · Kennedy then drew up an application for
the insurance agreed upon between him and the plaintiff, and
by presenting such application to the defendant's agent, ob-
tained said policy.    The plaintiff afterward purchased the
property, and desiring to have the insurance transferred to
himself, he went to Kennedy or some other member of his
firm, and employed him to get such transfer made, at the
same time delivering to him the old policy.    On such em-
ployment, and bearing in his hands as a badge of his author-
ity to act for the plaintiff the policy to be surrendered, he
went again to the defendant's agent and obtained for the
plaintiff the policy in suit.

The court, in the instructions to the jury, wholly ignored
these circumstances, which, if not conclusive in favor of the
defendant, tend strongly to rebut the presumption that Ken-
nedy or his firm were the defendant's agents.    By the first
instruction for the plaintiff the court held, in substance, that
if Kennedy examined the premises with a view of insuring
them, representing himself · to be an insurance agent, and
afterward returned with the policy ready for delivery, and
that the plaintiff accepted the policy and paid the premium
in good faith, under the belief that Kennedy was the defend-
ant's agent, and that the premium was afterward paid to and

Kings Co. Fire Ins. Co. v. Swigert.

accepted by the defendant, then the defendant is estopped to dispute the right of Kennedy to act as its agent. Here all the evidence tending to show that Kennedy was the plaintiff's agent, thereby rebutting the presumption of agency for the defendant, is overlooked. Nor was there any other instruction given in which any proper hypothesis, based upon the evidence thus ignored, was submitted to the jury.

The first instruction is also erroneous in directly asserting, and thereby assuming as proved, many of the facts which should have been left to the jury for their determination. After submitting the hypothesis that Kennedy examined the premises with a view of insuring them, representing himself to be an insurance agent, and afterward returned with the policy ready for delivery to the plaintiff, the language of the instruction is, "who accepted the policy and paid the premium in good faith, under the belief that such person was an agent clothed with full power of defendant company who issued the policy, which premium was afterward received, paid to and accepted by the defendant company." This is the language of assertion and not of hypothesis. It is erroneous for a court, in its instructions to the jury, to assume the truth of or assert as true any controverted fact, but such facts should in all cases be submitted to the jury to be found from the evidence.

The main contest at the trial turned upon the question whether, in the light of all the evidence, Kennedy was to be deemed to have acted as the defendant's agent in procuring the policy in suit; but the court, in the second instruction for the plaintiff, and in the modification of the defendant's first, eighth, eleventh and twelfth instructions, virtually assumed that he was the defendant's agent, and merely submitted to the jury the question, upon which there was but little controversy, whether he had notice of the fact that the plaintiff was keeping and using gasoline on the premises. Thus, in the plaintiff's second instruction, the jury were told, in substance, that when it is known to the insurance agent, at the time the policy is issued, that the assured keeps an article prohibited by the policy, and intends to keep it on the premises insured

such act of the assured will not render the policy void, whether permission to keep such article on the premises is indorsed on the policy or not, and if the jury believe, from the evidence in this case, that the agent of the defendant knew, at the time the policy was issued, that gasoline was kept on the premises in question, and that the assured intended so to keep it, such keeping or use would not render the policy void. The term "agent," as employed in this instruction, can refer to no other person than Kennedy, or some member of his firm, and the fact that the agency contended for by the plaintiff existed, instead of being submitted to the jury, is here tacitly assumed, and the question of notice to such agent only is submitted.

The same error, in perhaps even a balder form, appears in each of the modifications which the court made to the defendant's instructions, and no instruction was given except the plaintiff's first instruction, in which the question whether Kennedy or his firm were the defendant's agents, was submitted to the jury in any form.

For the errors in the instructions to the jury above pointed out, the judgment will be reversed and the cause remanded.

Judgment reversed.