## Thuringia Insurance Company v. Leopold Norwaysz.

1. INSURANCE—*Violation of Contract by Tenant of Insured.*—Where a landlord enters into a contract of insurance providing that no gasoline, except that contained in the reservoir of a gasoline stove, shall be kept within the building, it is his duty to see to it that the provisions of the policy were not violated even by the tenant; and in case the tenant violates such provision, the insurer is not liable.

2. SAME—*Not Necessary to Show that Fire Occurred by Reason of Violation of Contract.*—It is not necessary to show, in order to maintain a defense upon a policy of fire insurance prohibiting the storage of gasoline on the premises, except in the reservoir of a gasoline stove, that the fire occurred by reason of the violation in such respect, of the terms of the policy; the question is whether the condition of the policy has been violated.

3. SAME—*Meaning of Clause " Or if the Hazard be Increased by Any Means Within the Control or Knowledge of the Insured."*—The clause "or if the hazard be increased by any means within the control of the insured," refers to means not specifically referred to in the policy itself, and does not modify the force of the other clauses under consideration.

**Assumpsit**, on a policy of fire insurance. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed. Opinion filed December 16, 1902.

**Statement.**—This suit was brought by appellee against the Thuringia Insurance Company of Germany, upon a fire insurance policy covering a building and sheds on the premises described in the policy as 4346 Honore street, Chicago. The fire loss occurred the night of June 20, 1900. The lot, which, with the house and sheds thereon, constituted the premises in question, was lot 21 of Stone & Whitney's subdivision, and was the fifth lot north from the corner of Forty-fourth street. The other four lots, between that lot and the corner, were all improved with frame houses, and the title stood in the name of Frank Norwaysz, a brother of the plaintiff. In December, 1899, lot 25 was conveyed by Frank Norwaysz to the plaintiff, for the consideration, as shown in the deed, of $1,600, and immediately thereafter the plaintiff took out the insurance policy for $1,900 upon the house and appurtenances, which stood, however, upon lot 21.

The plaintiff claims that when he took the deed from his brother he supposed it covered the premises 4346 Honore street, instead of the corner lot, four houses away, and upon the trial he was permitted, over defendant's objection, to put in evidence a new deed made on that day, from his brother to himself, conveying the premises covered by the policy.

The policy in controversy contains the following provisions: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not  *  *  * or if the hazard be increased by any means within the control or knowledge of the insured;  *  *  * or if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple;  *  *  * or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise;  *  *  * or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises  *  *  * gasoline, naphtha, nitro-glycerine or other explosives, or petroleum or any of its products of greater inflammability than kerosene oil of the United States standard (which last may be used for lights and kept for sale according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by day-light or at a distance not less than ten feet from artificial light)."

Attached to the policy was a "rider" in large type as follows:

"VAPOR STOVE AND GASOLINE PERMIT.

Permission is hereby given for the use of gasoline stoves; the reservoir to be filled by daylight only, and when the stove is not in use.   Warranted by the assured that no arti-

ficial light be permitted in the room when the reservoir is being filled, *and no gasoline, except that contained in said reservoir*, shall be kept within the building, and not more than five gallons, to be in a tight and entirely closed metallic can, free from leak, on the premises adjacent thereto."

Following the above paragraph on said "rider," printed in small type, was the following:

"CAUTION.—The danger from gasoline stoves is not so much in themselves as in having the material about. At ordinary temperature gasoline continually gives off inflammable vapor, and a light some distance from the material will ignite it through the medium of this vapor. It is said that one pint of gasoline will impregnate 200 cubic feet of air and make it explosive, and it depends upon the proportion of air and vapor whether it becomes a burning gas or destructive explosive. Beware of any leaks in cans and never forget,how dangerous a material you are handling."

At the conclusion of all the evidence the defendant's attorneys moved the trial court, in writing, to instruct the jury to find the issues for the defendant. The court denied the motion and refused the instruction. The jury returned a verdict finding the issues for the plaintiff, assessing damages at the amount of the policy. Motions for a new trial and in arrest of judgment were overruled and from the judgment in behalf of appellee this appeal is prosecuted.

LACKNER, BUTZ & MILLER, attorneys for appellant.

WILLIAM A. DOYLE, attorney for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The only question presented for our consideration is whether or not the trial court erred in refusing to direct a verdict for the defendant at the close of all the evidence. It appears from testimony introduced in behalf of appellee that, at the time the insured premises were destroyed by fire, a portion of the building was occupied by a tenant of appellee's. This tenant was called as a witness and testified that she was in the habit of using kerosene

oil, both for lighting purposes and also in a stove; that shortly after moving into the premises, she or her husband had purchased a gallon of kerosene and also a gallon of gasoline.   The gasoline was used in a cooking stove during the summer and the witness testified that she had the stove filled and kept the balance in the pantry; that the can in the pantry "was almost full, not very much taken out;" that the pantry was "in the kitchen" and that the can of gasoline, almost full, remained in the pantry.   This evidence is uncontradicted and was, as we have stated, introduced by and in behalf of appellee.

It is expressly provided in said policy that if gasoline be kept, used or allowed on the premises, "the entire policy, unless otherwise provided by agreement, indorsed herein or added hereto," shall be void.   This prohibition is modified by the permission contained in the so-called "rider" attached to the policy which authorized the use of a gasoline stove; "the reservoir to be filled by day-light only, and when the stove is not in use; warranted by the assured that * * * no gasoline except that contained in said reservoir, shall be kept within the building."   It is further warranted that not more than five gallons will be kept on the adjacent premises, which shall be contained in a tight and entirely closed metallic can, free from leak. The " Caution " attached to and made a part of the " rider " explained the dangerous character of gasoline and exhorted the assured to beware of any leaks in cans and never to "forget how dangerous a material you are handling."

It is apparent that the terms of the policy were violated by the conduct of the tenant, who was keeping upon the premises a gallon can of gasoline, "almost full," at the time of the fire, whereas the policy and permit attached thereto provided that no gasoline except that contained in the reservoir of the stove, should be kept within the building.   This " gasoline permit," so-called, which is usually attached to policies like the one under consideration, may readily, and probably often does, mislead the insured who has not taken the trouble to read it over with some care.

He might without such careful reading, readily suppose that a " vapor stove and gasoline permit," was intended to and did authorize the keeping in the house of a supply of gasoline reasonably sufficient for use in the stove, and so entirely overlook the provision that " no gasoline, except that contained in said reservoir, shall be kept within the building," overlooking the requirement that any gasoline not in the reservoir of the stove, not exceeding five gallons in quantity, must be kept outside the building under penalty of losing the insurance in case of loss.   In the case at bar, there is evidence tending to show that the fire, which occurred at night, originated in that portion of the building where the gasoline was kept, and also that it was accompanied by an explosion of such force that the front doors and windows of the house were blown out.   The family of the tenant who occupied this portion of the building and kept the gasoline were absent at the time.

There was nothing in the policy which relieved the insured from a violation of its conditions by a tenant. The parties had a right to enter into such contract as they might agree upon.   The appellant and the insured were alike bound by its terms and conditions.   Crikelair v. Citizens' Ins. Co., 168 Ill. 310.   It was the duty of the insured to see to it that the provisions of the policy were not violated even by the tenant, if he desired to avail himself of its protection.   This may seem to be a harsh doctrine which allows the landlord to be deprived of the insurance on his property by conduct of his tenant of which he has no knowledge, of which in most cases he can have no knowledge and which he may be powerless to prevent.   But the weight of authority sustains the doctrine nevertheless, where, as in this case, the policy, which is the contract of the parties, explicitly prohibits the act which the tenant has committed.

In the case of Badger v. Platts, 68 N. H. 222, a suit was brought upon a policy of insurance which provided that the policy should be void, if naphtha should be " used by the insured upon the premises insured."   Naphtha or gasoline

were used and the fire was caused by an explosion of naphtha which was being lighted by an employe of the tenant. It was claimed that this use of naphtha was unknown to the assured, and the court says : "It is immaterial whether he knew naphtha was used in the building. Its use was prohibited by the terms of the policy, and it was the duty of Badger, who must be held to have contracted that it should not be used, to know whether that condition was complied with. The use of naphtha by the tenant invalidated the policy so far as Badger was concerned, whether he knew of its use or not. Wheeler v. Insurance Co., 62 N. H. 326 and 450."

In the case of Kohlman et al. v. Selvage, 54 N. Y. Supplement, 230, there was a prohibition in the policy to the effect that gasoline should not be kept, used or allowed on the premises. The building was used by the insured, plaintiffs in that suit, but a platform at the rear of the building was rented to a dealer in garden truck, to display and sell goods. The tenant used a gasoline lamp for lighting purposes, which was hung upon a nail driven into the outside wall of the building. The court says : "The plaintiffs thus having control of the premises, which included the building, were placed under the obligation of seeing that no gasoline was used in violation of the terms of the policy." * * * "The fact that the plaintiffs claimed not to have known the gasoline lamp was used is no defense, their ignorance being no excuse for failing to keep the obligations they assumed of seeing to it that no gasoline was used on the premises."

In the case of Gunther v. Liverpool and London and Globe Ins. Co., 134 U. S. 110–115, suit was brought upon a fire insurance policy which prohibited the assured from keeping on the premises gasoline and other explosives, unless written permission therefor should be indorsed on the policy. A "rider" was attached, which authorized the use of kerosene oil for lights, "lamps to be filled and trimmed by daylight only." It was held that "a breach of the conditions by any person permitted by the assured to

occupy the premises was equivalent to a breach by the assured himself; and that the assured was chargeable with any acts of his lessee in keeping upon the premises any of the prohibited articles, although they were not intended to be used there, but for lighting other places." Referring to the 116 U. S. 128–129.

It is further said in the case last cited (p. 116) that " if the case had been submitted to the jury upon the testimony introduced and a verdict had been returned for the plaintiff, it would have been the duty of the court to set it aside for want of any evidence to warrant it. Under such circumstances, it is well settled that the court was not bound to go through the idle form of submitting the case to the jury, but rightly directed a verdict for the defendant." The evidence showed that the fire originated while oil or gasoline was being drawn from a barrel at night by the light of a lantern. The trial court directed a verdict for the defendant and the judgment which followed was sustained.

There is in the case at bar no dispute that the condition of the policy was violated, and therefore in this case no question for the jury of that character.

Nor is it necessary to show in order to maintain a defense upon a policy like the one in controversy, that the fire occurred by reason of the violation in such respect of the terms of the policy. The question is whether the condition of the policy has been violated. Turnbull v. Home Fire Ins. Co., 83 Md. 312; Newport Imp. Co. v. Home Ins. Co., 163 N. Y. 237; Am. & Eng. Ency. of Law, 2d Ed., Vol. 137, p. 291.

Other cases sustaining views such as we have expressed are the following : Kelly v. Worcester Mut. Fire Ins. Co., 97 Mass. 284; Heron v. Phœnix Mut. Fire Ins. Co., 180 Pa. State, 257; King's County Fire Ins. Co. v. Swigert, 11 Ill. App. 590; Concordia Fire Ins. Co. v. Johnson, 4 Kans. App. 7; Fischer v. London & Liverpool Fire Insurance Co., 83 Fed. Rep. 807. See also, Am. & Eng. Ency. of Law, 2d Ed., Vol. 13, bottom page 290; Boyer v. Grand Rapids

Fire Ins. Co., 124 Mich. 455. In the last mentioned case it is held, that a provision in a fire insurance policy, declaring the policy void if gasoline be kept, used or allowed on the premises insured, is violated where a small quantity of gasoline, as testified, was kept on the premises for use in a gasoline stove in a room having no direct connection therewith; and it is said (p. 460), "the language of the contract is plain and unambiguous and the parties are bound by it."

Attention is called in the case before us, by appellee's counsel, to the clause in the policy which reads, " or if the hazard be increased by any means within the control or knowledge of the insured," and it is said there is conflict in the decisions as to whether the prohibiting provisions of the policy are applicable when violated by the tenant without the knowledge of the insured; citing Am. & Eng. Ency. of Law, 2d Ed., Vol. 13, p. 298, and cases referred to in the notes. The clause providing that if the hazard be increased by means within the control or knowledge of the insured the policy shall be void, clearly refers to means not specifically referred to in the policy itself, and does not modify the force of the other clauses under consideration. See Waggonick v. Westchester F. Ins. Co., 34 Ill. App. 629.

That there is some apparent conflict is true. See Hall v. People's Mut. Fire Ins. Co., 6 Gray (Mass.), 185–191. But some cases claimed to be conflicting are not so in fact. Such a case is Nebraska & Iowa Ins. Co. v. Christiensen, 29 Neb. 572. There it was urged that "the risk was increased by means within the control or knowledge of the assured," because the tenant at his own expense and without the knowledge or consent of the plaintiff had built an addition to the building insured. The court says : " We believe the rule to be this : that when a tenant, without the knowledge or consent of the insured, erects an addition to the house covered by the policy, it does not avoid the policy unless it contains a stipulation to the effect that an increase of the risk by a tenant will render it null and void." There was no such stipulation in that policy. In the case at bar the prohibition is explicit.

It is urged by appellant's attorneys that the trial court should have directed a verdict in appellant's favor because at the time the policy was issued, and at the time of the fire, appellee did not hold the legal title to the premises. There is evidence, however, tending to show that appellee was in fact the owner of the premises, and that by a clerical error in drawing the deed the lot was described as lot 25, whereas the parties intended that the deed should, and they supposed it did, convey lot 21. Appellee was in possession and was the unconditional owner of lot 21, the premises where the fire occurred, and the error in description in his deed was corrected as soon as discovered at the time of the trial. The policy required "unconditional and sole ownership" in the insured, and the ground was so owned by him in fee simple.

The language of the policy must be held to mean what it says. By its terms the mere keeping of gasoline on the premises was made a ground of forfeiture without regard to results, and without reference to the origin of the fire. The fact of the violation is a sufficient defense, though by a tenant without knowledge of the insured, and whether it be shown that the fire resulted from such violation or not.

The judgment of the Circuit Court must be reversed, not because we differ from the trial court upon the finding of facts, but for error in the application of the law to undisputed facts.