Stefan Szymkus v. Eureka Fire and Marine Insurance Company, et al.

Gen. No. 11,841.

1. INSURANCE POLICY—*when keeping of benzine does not invalidate.* Where an insurance policy has a provision that it shall be void "if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises, benzine," such policy is not invalidated merely by the fact that a small quantity of benzine may have been kept upon such premises for use in cleaning metals.

2. INSURANCE POLICY—*how, construed.* An insurance policy written by a company is to be construed more strongly as against it and liberally in favor of the insured.

3. INSURANCE COMPANIES—*when, jointly liable.* Where two insurance companies, by a single policy, signed by each of them, are made liable for an equal amount in the event of a fire loss, they are jointly liable and may be sued in the same action, notwithstanding a recital in

such policy that each company has received one-half of the premium, as such provision and others of like import are deemed contract arrangements pertaining solely as between such companies.

4. CREDIBILITY OF WITNESS—*when instruction upon, is erroneous.* An instruction as follows: "The court instructs the jury that if the jury believes from the evidence that the plaintiff has wilfully sworn falsely on the trial of this case as to any fact or circumstances material to the issues in this case, then the jury should find the issues for the defendants," is erroneous in that it tells the jury not merely that they are at liberty to disregard the plaintiff's testimony, but also that it is their duty to disregard it if they find, etc., without reference to whether or not such testimony has been corroborated.

Action of assumpsit upon insurance policy. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed June 9, 1904.

M. W. & H. B. ROBINSON, for appellant.

STEIN & PLATT, for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The appellant sued the appellees, the Eureka Fire & Marine Insurance Company and the Security Insurance Company, on a policy of insurance against fire issued to appellant by said companies. The case was tried by the court and a jury; the jury found the issues for the appellees, and the court, after overruling a motion for a new trial, rendered judgment on the verdict.

The policy is as follows:

" By this policy of insurance the Eureka Fire & Marine Insurance Co. and the Security Insurance Company of the City of Cincinnati, State of Ohio, each acting and contracting for itself and not jointly or one for the other, in consideration of the stipulations herein named, and the sum of Twenty-two and 75-100 Dollars, to be paid by the insured hereinafter named, the receipt whereof is hereby acknowledged, one-half thereof being paid to and received by each of said companies, does insure Stefan Szymkus and his legal representatives for the term of one year from the 12th day of February, 1901, at noon, to the 12th day of Feb., 1902, at noon, against all direct loss or damage by fire, except as

hereinafter provided, to an amount not exceeding Thirteen Hundred Dollars, one-half of said amount being insured by the Eureka Fire & Marine Co. of Cincinnati, Ohio, and one-half of said amount being insured by the Security Insurance Co. of Cincinnati, Ohio, on the following described property, while located and contained as described herein and not elsewhere, to wit:

$500—On stock of general merchandise, consisting of dry-goods, notions, furnishing goods, clothing, hats, caps, shoes, boots, and rubbers, curtains, toilet and fancy articles, sewing machines, and such other articles and goods usually kept on sale in a general dry-goods store and jewelry store, and on stock of watches and jewelry, clocks, and such other goods belonging thereto, and other merchandise as is generally kept for sale in a retail jewelry store, his own or held in trust or for repairs, or sold, but not delivered, and

$200—On fixtures and furniture, including counters, shelvings, tables, show cases, jewelry benches, jeweler and machinists' tools, watch and jewelry materials, stove, and awning, and other fixtures and furniture pertaining to the above mentioned business, while contained in the one and two-story frame store and dwelling situate and known as No. 8714 Commercial Ave., Chicago, Illinois. Attached to and forming a part of policy No. 117816 of the Eureka, and Security Insurance Company of Cincinnati, Ohio. Other insurance permitted.

B. S. ROZYNEK, Agent.

$600—On household and kitchen furniture, useful and ornamental, china, glass and earthenware; carpets, beds, bedding, linens, family wearing apparel, printed books and music; silver and plated ware, watches and jewelry in use; pictures, paintings, engravings, mirrors, and their frames at not exceeding cost price; pianoforte, organ and sewing machine, if any, trunks, fuel, and family provisions, while contained in the one and two-story frame building and its additions adjoining and communicating, occupied as a store and dwelling, situated on the west side of Commercial Ave., No. 8714, between 87th and 88th streets. Other insurance permitted."

The policy contains other provisions, in substance as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the

subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The policy to be void "if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises benzine," etc.

"The insured, as often as required, shall exhibit to any person designated by these companies, all that remains of any property herein described, and submit to examinations under oath by any person named by these companies, and subscribe to the same, and, as often as required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by these companies or their representative, and shall permit extracts and copies thereof to be made.

" This policy being a joint policy, the companies respectively agree that, in case the insured shall resort to judicial proceedings for the purpose of enforcing his claims under this policy, it shall not be necessary for him to proceed against each of them, but that he may bring his action against either of them, and that the other shall be bound and concluded by the result of such action, in the same manner and to the same effect as if it had been prosecuted against each of them separately, with the same result."

There are other provisions in the policy, such as are usual in fire insurance policies, to which we do not deem it necessary to refer.

The building in which the insured property was, with all its contents, was destroyed by fire the night of July 9, 1901. The appellant denied having kept benzine in his store, but admitted that he purchased benzine, at one time as much as a gallon, for the purpose of cleaning clocks, and that when he used the benzine he used it outside his store. The evidence for the appellees, however, tended to prove that between the date of the policy and the time of the fire the appellant had some benzine in his store. There was no evidence that appellant kept benzine for sale, or used it for

any purpose except cleaning clocks and watches. The appellees insured $200 on fixtures and furniture, including counters, etc., jewelry and machinists' tools, watch and jewelry materials, and other fixtures and furniture pertaining to the above mentioned business, and appellant's counsel contends that benzine, if kept by appellant at all, having been kept for use in his business, did not avoid the policy, notwithstanding the prohibitive clause above mentioned. In support of this contention appellant's counsel cites 13 Eng. & Am. Ency. of Law, 2nd ed., 293–5, where the author, referring to a prohibitory clause such as that contained in the policy in question, says: "An important exception to the applicability of this clause occurs when the prohibited articles are incident and necessary to the trade or business conducted by the insured," citing numerous cases. In 3 Joyce on Insurance, sec. 2202, the author says: "The temporary taking of benzine upon the premises, for the purpose of cleaning the machinery, is not a violation of a condition forbidding the insured to 'keep or have benzine' upon the premises, and if the keeping of a particular article, such as benzine, is necessary in the insured's business, the fact that the printed portion of the policy excludes the keeping thereof, will not avoid the contract, when the written portion of the contract covers the property to be used in conducting that particular business," citing Mears v. Humboldt Ins. Co., 92 Penn. St. 15, and Faust v. The Am. Fire Ins. Co., 91 Wis. 158, which cases we have examined and find they fully support the text.

The law, as stated by Joyce, *supra*, is also sustained by the following cases: Fraim et al. v. Nat. Fire Ins. Co., 170 Penn. St. 151; Maril v. Connecticut Fire Ins. Co., 95 Ga. 604; Hall et al. v. Ins. Co. of N. America, 58 N. Y. 292; Davis v. The Pioneer Furniture Co., 102 Wis. 394.

In Fraim et al. v. Nat. Fire Ins. Co., *supra*, the prohibited article was gasoline, and the prohibitory clause was: "This entire policy, unless otherwise provided, by agreement indorsed hereon, or added hereto, shall be void if (any usage or custom of trade or manufacture to the contrary

notwithstanding) there be kept, used or allowed on the above described premises * * * gasoline." The provision, substituting benzine for gasoline, is substantially the provision in the present case. The business of the insured was gold, silver and nickel plating. "The gasoline, in small quantities, was used in the process of plating, principally for cleaning tools and molds," and the court held that its use did not avoid the policy.

In Davis v. Pioneer Furniture Co., *supra*, the plaintiff, as receiver of the company, sued on a premium note given to the company by Davis, the defendant. Davis pleaded that the note was void, by reason of a provision in the policy that the policy should be void if there were kept, used, or allowed on the premises, benzine, and that the condition had been broken. The court held that if the defendant, in case of a fire, could have recovered, notwithstanding the use of benzine on the premises, he was liable on the note, and said: "The evidence shows that there were a few barrels of benzine kept on the premises at all times; that it was used in finishing the furniture manufactured on the premises;" and further said: "In the present case the burden was on the defendant to show that a condition of things existed which avoided the policy. This burden was not discharged by showing that benzine was used on the premises in manufacturing furniture in the usual and ordinary way, because the policy contemplated the manufacture of furniture and the use of such materials as are customarily used for such purpose; but it must be further shown that it was kept in unnecessarily large quantities, or for purposes not contemplated by the policy. Neither of these facts appears in the present case, and hence no breach of the condition was shown."

In Western Assurance Co. v. Rector, 85 Ky. 294, cited by appellees' counsel, the court, pp. 301–2, after holding that the insured was bound by a clause in the policy prohibiting the keeping of gunpowder on the premises, recognize the law to be as stated in 3 Joyce, sec. 2202, *supra*.

Counsel for appellees also cite Thuringia Fire Ins. Co. v.

Norwaysz, 104 Ill. App. 390, affirmed in Norwaysz v. Thuringia Fire Ins. Co., 204 Ill. 334. In the latter case the court, p. 346, say: "There are two general classes of cases in which it has been held with considerable uniformity that a breach of a prohibitive clause in a policy such as this will not operate to relieve the insurer from liability thereon. One, where the policy of insurance, being on a stock of goods used in business, contains clauses forbidding the keeping of certain materials which are customarily a part of such a stock of goods (Reaper City Ins. Co. v. Jones, 62 Ill. 458); the other, where the breach consists in keeping small quantities of the forbidden article for cleaning clothes or machinery, or like purposes. The reason for the holding is, that in the first class, by insuring the stock of goods in which the forbidden articles were a usual part, the insurer impliedly waives the restrictive clause referring to it. See note to Lancaster Fire Ins. Co. v. Lenheim, 89 Pa. St. 497, in 33 Am. Rep. 781. In the second class the bringing of the small quantities on the premises is held to be such a trifling departure as will not amount to a breach."

The court gave to the jury the following instruction for the appellees:

"11. The court instructs the jury that if they find from the evidence that before the time of the fire in question and during the term covered by the policy sued upon, there was kept, used, or allowed upon the premises described in the said policy any benzine, then the defendants are not liable, and your verdict must be for the defendants."

By this instruction, if the jury found from the evidence that any, even the smallest quantity, of benzine was on the premises at any time before the fire, and during the period covered by the policy, they were instructed to find for the appellees. This instruction would warrant a verdict against appellant if it appeared from the evidence that he had walked through the premises with a half ounce bottle of benzine in his pocket. In Mears v. Humboldt Ins. Co., 92 Penn. St. 15, the prohibition was against keeping or having benzine on the premises. In respect to the words, "keep or have," the court say: "The words 'keep or have,' as

applied to the articles first enumerated, evidently were intended tó prevent a storage of the prohibited articles upon the premises, either permanently or habitually. While the words are used in the disjunctive, they are evidently synonymous, and signify to retain in possession. It would be straining a point to say that bringing a prohibited article upon the premises upon a single occasion, and for the sole purpose of cleaning machinery, was keeping or having it there within the meaning of the policy." In respect to the word "use," the court say: "We are not disposed to give the word 'use' in this policy the narrow construction claimed for it. It must have a reasonable interpretation, such as was probably contemplated by the parties at the time the contract was entered into. Nearly every policy of insurance issued at the present time contains this condition, or a similar one. What is intended to be prohibited is the habitual use of such articles, not their exceptional use upon some emergency." We think the instruction erroneous.

The court also instructed the jury as follows:

"16. The court instructs the jury that if the jury believes from the evidence that the plaintiff has wilfully sworn falsely, on the trial of this case, as to any fact or circumstance material to the issues in this case, then the jury should find the issues for the defendants."

We know of no precedent for this instruction, and think it clearly erroneous. The usual instruction, in case of wilful false swearing, was given by the court, defendants' instruction 4, which instructed the jury that, in case of wilful false swearing by any witness, they " were at liberty to disregard his entire testimony, except in so far as it has been corroborated by other credible evidence, or by facts and circumstances proven on the trial, if any part of his testimony has been so corroborated." By instruction 16 the jury were informed, not merely that they were at liberty to disregard appellant's testimony, but that it was their duty to disregard it, if they found, etc., without reference to whether it was or not corroborated. The appellant's testimony was, at least in part, corroborated. Ap-

pellant was not at home the night of the fire, and he was cross-examined by appellees' counsel as to where he was and what he was doing. Subsequently appellees called as a witness Mr. McMillen, who testified that October 9, 1901, he met appellant and asked him where he was the night of the fire, and in response to McMillen's questions appellant gave substantially the same account of himself and his doings the night of the fire, as he did on cross-examination. The appellees called as a witness Frank Clawitter, who testified that appellant kept boarders, and that they moved away the night before the fire. Obviously, this evidence was introduced to create in the minds of the jury the impression that appellant caused the fire. Appellant, called in rebuttal, testified that his sister-in-law visited him in June, and moved from his place in the day time, two weeks before the fire, and that this was the only moving from his place which occurred before the fire. Appellant's testimony in this regard was corroborated by that of John Molski. Appellees' own witnesses testified to having heard appellant say, on different occasions before the fire, that he purchased benzine for use in cleaning clocks. Appellant was the only witness for himself as to the extent of his loss, and the instruction in question was highly prejudicial to him, and the giving it is sufficient cause for reversal.

Appellees' counsel contend that by the terms of the policy they are not jointly, but only separately, liable. No objection of variance between the declaration and evidence was made in the trial court, nor was any plea of non-joint liability filed. The question is raised here, so far as appears from the record, for the first time. The insurance is by both appellees, for the same amount, by a single policy, signed by both appellees, and each is, by the policy, made liable for the loss which may occur, to the extent of the amount of insurance. Appellees' counsel rely on these words of the policy: "By this policy the Eureka Fire & Marine Insurance Company and the Security Insurance Company of Cincinnati, Ohio, each acting and contracting for itself, and not jointly, or one for the other, in consider-

ation of stipulations herein named and $22.75 to be paid by insured, one-half thereof being received by each of said companies, *does* insure Stefan Szymkus  *  *  *  against all direct loss or damage by fire, except as herein provided, *to amount not exceeding $1,300*, one-half of said amount being insured by said Eureka and one-half by said Security Insurance Company." The language is, " does insure Stefan Szymkus  *  *  *  to amount not exceeding $1,300;" that is, each of the companies insures him to that amount, so that each of them is liable to appellant to the extent of $1,300 in the event of loss of the property insured by fire. Each being so liable by the same contract made and signed by both, we are of opinion that appellees are jointly liable. The recital that each received one-half the premium, and the provision that each shall be liable for half the loss, must be construed as applying solely to the companies, as between themselves, and as fixing as between them the proportion which each must pay in the event of a loss; because, as each, by the very words of the policy, insures appellant to the amount of $1,300, said recital and provision cannot apply to him. The appellees wrote the policy, and it is to be construed more strongly as against them, and liberally in favor of the insured. 1 Joyce on Insurance, sec. 222, and cases cited. In Commercial Ins. Co. v. Robinson, 64 Ill. 265, 268, the court, citing Aurora Fire Ins. Co. v. Eddy, 49 Ill. 106, say : " Let us remark, in the first place, that equivocal expressions, whereby it is sought to narrow the range of the obligations these companies profess to assume, are to be interpreted most strongly against the company." See, also Phenix Ins. Co. v. Stocks, 149 Ill. 319, 332. In 4 Joyce on Insurance, sec. 3649, it is said : " Where an insured has several policies covering the same property, he may bring an action against all of the insurers, or may sue any one of them for the whole loss." To hold, in the present case, that appellees may be sued jointly, can work no substantial injustice to them, because they have agreed that in the event of a suit against one of them the other shall be bound by the result of the suit; whereas, a con-

trary holding may deprive appellant of all remedy, by reason of the provision in the policy that no suit can be maintained unless commenced within twelve months after the fire. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*