GRAVES, LINDSAY & McLAURIN, INC., *v.* McPARLAND-SCANLON LUMBER CO.

(Division A. May 21, 1934.)

[154 So. 884. No. 31264.]

Shannon & Schauber, of Laurel, for appellant.

278

**Deavours & Hilbun,** of Laurel, for appellee.

Argued orally by **Charles R. Shannon,** for appellant, and by **Henry Hilbun,** for appellee.

**Cook, J.,** delivered the opinion of the court.

Appellant, Graves, Lindsay & McLaurin, Inc., an insurance agency located in Laurel, Mississippi, instituted this suit by way of an attachment in chancery against the appellee, an Illinois corporation, which owns and operates a lumber manufacturing plant in the city of Laurel, seeking to recover premiums alleged to be due on fire insurance policies written by this agency and covering the appellee's property in the city of Laurel. The court be-

low entered a decree dismissing the bill of complaint, and from this decree this appeal was prosecuted.

In July, 1931, George C. McLean, an insurance broker doing business in Chicago, Illinois, as the McLean-Sommerville Company, solicited of the president of appellee corporation, at his office in Chicago, the privilege of writing insurance on the appellee's property in Laurel, Mississippi. Upon McLean's solicitation he was authorized to write fire insurance on this property to the amount of fourteen thousand dollars. Thereupon, without the knowledge of appellee, McLean negotiated directly with appellant, and as a result the appellant issued five policies covering appellee's property and mailed them to McLean for delivery to appellee. With these policies there was sent a bill for the premiums thereon, which were charged to the appellee on the books of the appellant. After the delivery of the five policies, for some reason, two of them were recalled and three others were substituted; the difference in the premium charges on the three policies substituted and the return premium on the two canceled being charged to appellee.

The president of appellee company first learned that appellant issued the policies when he noticed its name stamped on the face thereof at the time the policies were delivered to him by McLean. The premiums on these policies were not paid when they were delivered; but later, on July 27, 1931, on a bill from the McLean-Sommerville Company, the appellee paid the amount of the premiums to the said McLean. The appellant endeavored to collect these premiums from McLean, but upon his refusal or failure to pay, on October 27, 1931, it, for the first time, notified the appellee that these premiums had not been paid and demanded payment of it. It now appears from the evidence that McLean had disappeared from Chicago.

The evidence further shows that the president of appellee company had known McLean for about fifteen

years as an insurance agent and broker; that he was appellee's local agent in Chicago, and was referred to in correspondence as its Chicago agent; and that, upon authority so to do, McLean had secured insurance on appellee's Laurel property for the year immediately preceding the issuance of the policies by appellant. Prior to the negotiations for the insurance here involved, the appellant had had no sort of business relations or dealings with McLean or the McLean-Sommerville Company.

Upon these facts the decisive question is: Was McLean the agent of the insurers or of the insured? An agency to deliver the policies would not necessarily imply the power to collect the premiums, but the extent of the agency in that regard must be determined by the particular circumstances of the case and the relations existing between the respective parties. It does not here appear that McLean ever had any other transaction with the appellant; that it ever requested him to solicit insurance, or had any acquaintance with him further than that arising from the negotiations concerning these particular policies. The appellee authorized McLean to place the insurance for it. For several years prior to that time it had been dealing with him as its agent for securing insurance on its property, and for the period just prior to the issuance of the policies here involved it had employed McLean to secure insurance on the Laurel property, and he had placed such insurance through some eastern agency. The premiums were not paid to McLean when the policies were delivered, or upon the presentation of appellant's bill therefor showing a charge against appellee, but they were later paid on a bill presented by McLean showing an alleged indebtedness to the McLean-Sommerville Company. At that time the appellee had notice of the fact that the policies had been written by the appellant.

In Citizens' Fire Ins. Co. v. Swartz, 21 Misc. 671, 47 N. Y. S. 1107, on a state of facts practically identical with

those above stated, it was held that the broker was the agent of the insured only, and that payment to him did not estop the insurance company from recovering the premiums from the insured. In Kings County Fire Ins. Co. v. Swigert, 11 Ill. App. 590, it was held that: "One who solicits insurance of the assured, and afterward procures a policy to be issued by the insurer, is not an agent of the latter. Nor does the fact that the insurer places its policy in the hands of the broker for delivery, make him an agent or give rise to a presumption of agency, except when there have been no previous dealings between the broker and the assured. If in fact, before the policy is issued, the assured has had dealings with the broker, or the latter is in any way clothed by the assured with the credentials of an agency, the insurer may treat him as the agent of the assured."

On the facts in the case at bar, we think the broker was the agent of the insured, and that payment to him did not relieve the insured from liability for the premiums sued for. However, for the nonpayment of these premiums, the insurance companies, as they had a right to do under the terms of the policies, canceled them on December 1, 1931. Therefore, only the amount of the premiums which was earned to the date of such cancellation is recoverable, which amount, by an agreement of counsel correcting the record, is shown to be one hundred nineteen dollars and sixty-nine cents. The decree of the court below will therefore be reversed, and a decree entered here in favor of the appellant for one hundred nineteen dollars and sixty-nine cents.

Reversed, and decree here for appellant.